JOHNSTON v. CASE.

(Filed December 16, 1902.)

1. EXECUTION—*Sales—Equitable Title.*

> Where a mortgagee conveys land, the vendee gets only an equitable title, and a deed of a sheriff to a purchaser at a sale under execution against the vendee of the mortgagee conveys no title.

2. ADVERSE POSSESSION—*Color of Title.*

> A party claiming title by adverse possession under color of title derives no benefit from the possession of a third party, unless he can connect his title with that of the third party.

3. ADVERSE POSSESSION—*Tenancy in Common.*

> The possession by one of several tenants in common of land is sufficient to defeat the claim of adverse possession by a third person.

4. BOUNDARIES—*Adverse Possession—Color of Title—Description.*

> Where there is a general description and a particular description in a deed, introduced as a color of title, the particular description will control, and the general description will only be considered for the purpose of identifying the land.

5. DEEDS—*Seal—Registration—Evidence—Color of Title.*

> A paper writing without a seal, though registered as a deed, conveys nothing, and is not admissible in evidence to show color of title.

> CLARK, J., dissenting.

ACTION by Thos. D. Johnston and others against Jesse Case and others, heard by Judge *Frederick Moore* and a jury, at May Term, 1902, of the Superior Court of BUNCOMBE County. From a judgment for the plaintiffs, the defendants appealed.

*Merrimon & Merrimon, G. A. Shuford,* and *Chas. A. Moore,* for the plaintiffs.

*Jones & Jones,* and *Reed & Van Winkle,* for the defendants.

FURCHES, C. J.    This is an action of ejectment, and it is alleged by the plaintiffs, and admitted by the defendants, that James Case, the ancestor of the defendants, at one time was the owner of the land in controversy.   And the plaintiff undertook to show that he had acquired the title of James Case, and is now the owner of the land.   He undertook to do this by a mortgage deed from James Case to William Case, dated December 24, 1850; a deed from William Case to W. L. Henry, dated March 15, 1855; a deed from Sumner, Sheriff, to George Brooks, dated September 11, 1869; a deed dated the 13th November, 1882, from parties claiming to be the heirs of George Brooks to Samuel Brooks; a deed of trust from Samuel Brooks and wife to H. B. Stevens, dated February 4, 1893, and a deed from H. B. Stevens, trustee, to Thos. D. Johnston, the plaintiff, dated April 8, 1896.   And the plaintiff further claims that if he has failed to show that, in this way, he has acquired the title of James Case to the land in controversy, then, by color of title and adverse possession, that he has shown color of title to said land, and such adverse possession as to ripen into title, and that he is entitled to recover on that account.

During the progress of the trial, the defendants noted many exceptions, as appears of record, and upon judgment being rendered against them, they appealed.

We do not propose to consider all the exceptions taken, but only such of them as are necessary to a disposition of the case on appeal.

The Court properly held and instructed the jury that no

title passed to George Brooks by the sale and deed of Sheriff Sumner. *Sprinkle v. Martin,* 66 N. C., 55. This being so, all the evidence offered for the purpose of tracing the title from James Case to W. L. Henry, and all the conversations alleged to have taken place between James Case and said Henry, or any one else, as to whether he held under Henry, and as his being Henry's tenant, were irrelevant, incompetent and improperly allowed as evidence. It may not have appeared to be so when it was offered, as the case may not have been sufficiently developed at that time to show its irrelevancy. But if this were so when it appeared that the Sheriff's deed conveyed no title, as he was attempting to sell a mixed equitable estate (as in *Sprinkle v. Martin, supra*), he should have excluded it, and should have so charged the jury. This he did not do; but erroneously charged the jury if they found that James Case ever held under W. L. Henry, the plaintiff would be entitled to have counted such time, so held by him, as adverse possession. This was error. The plaintiff could only have had the benefit of such adverse possession of those who held under him, or those under whom *he derived his title.* And as he derived no title from Henry, he could not have the benefit of Henry's possession, nor of any one holding possession under him. If there was such holding under Henry, it would tend to strengthen Henry's title; but the plaintiff does not connect himself with Henry, and gets no support from any title Henry may have had.

The plaintiff must recover upon the strength of his own title, and it would be as fatal to his action to show that the title is in Henry, as it would be to show that it was in the defendants—as the plaintiff has failed to connect himself with Henry's title.

The plaintiff having failed to connect his title with that of Henry, the defendants are entirely disconnected with the plaintiff's title, if he has any, and free from any estoppel on

JOHNSTON *v.* CASE.

account of their being the heirs at law of James Case. That may have existed as between them and Henry's title, but not between them and the plaintiff's title. And the Court erred in charging the jury that the defendants, who were *femes covert,* or infants, were estopped and barred by adverse possession, the same as if they were *femes sole,* or of full age.

The plaintiff being unable to connect himself with the Henry title (if he had one), or any other title derived from James Case, the common source of title, he must fail unless he can recover under color of title and adverse possession. And as the defendants are the heirs at law of James Case, they are tenants in common, and the possession of any one of them would be sufficient to exclude the claim of adverse possession on the part of the plaintiff, if they have been in possession, and have not agreed to hold under the plaintiff or those under whom he claims, since the date of the Sheriff's deed.

But the color of title is *not title.* It is only a shadow, and not a substance; but for the purpose of quieting titles and to prevent litigation about State claims, the law has provided that where one enters into the open, notorious possession of land, *under color of title*—this shadow—and remains continuously in said adverse possession for seven years, claiming it as his own, the law will protect such possession; that such long possession under color of title, in the eyes of the law, ripens such color into title. But that shadow, or color, only extends to the boundaries marked by the color—the deed—and can extend no further; though they may be circumscribed, as they will not even cross another line, unless there is *actual possession* across that line, or lappage, as it is called. And if there is a general description, and also a particular description or boundary lines, they will control, and the general designation will only be considered for the purpose of identifying the land. This is so where the land is actually conveyed and the title passed under the deed. *Midgett v. Twy-*

*ford,* 120 N. C., 4. And certainly it must be so where the deed is not a title, but only a color of title. *Smith v. Fite,* 92 N. C., 319.

The paper writing, without a seal, called a deed, dated as of 1869, but written in December, 1887, as contended and not denied, and registered on the 8th of December, 1887, was improperly admitted in evidence. It was not a deed, and conveyed nothing. *Patterson v. Galliher,* 122 N. C., 511. And if it was color of title, and we do not think it was, it should not have been allowed in evidence, as it was to W. L. Henry, with whose title (if he had any) the plaintiff's chain of color had no connection, if he ever had any; and if any one could have gotten any benefit from this paper, it would be the W. L. Henry estate, which has no connection with the plaintiff's chain of colorable title or deeds. As we have stated, the benefit of possession for the purpose of ripening title can only be claimed when it is held by or under the plaintiff, the party claiming its benefit, or *those under whom they claim;* and, as we have also stated, to establish Henry's title (if that could be done) would be to defeat the plaintiff's action.

But this paper was not a *deed;* its registration was not authorized, and it could amount to no more than an unauthorized statement of William Case, not under oath, and should not have been admitted in evidence. But if it had been proved in such a way as to have been admissible in evidence (if that could have been done), it could not have the effect to enlarge the lines of the plaintiff's color. The deeds of the plaintiff did not convey the title; indeed, they conveyed nothing; and he now claims it by *color* and *adverse possession.* This color only extends to the boundary lines, and they can not be enlarged so as to change the color by showing what was intended to be conveyed. It is the *color* and adverse possession that gives title. But we will not discuss this matter further, as we have shown that this paper has nothing to do with the plaintiff's claim of title, or color of title.

There was error in the respects pointed out in this opinion, for which the defendants are entitled to a

New Trial.

CLARK, J., dissenting. The deed from Sheriff Sumner to George Brooks, 1869, has been before this Court, and has been expressly adjudged to be color of title. *Mfg. Co. v. Brooks,* 106 N. C., 107. The plaintiffs and those under whom they claim have been in continuous possession thereunder until the intrusion of the defendant upon the *locus in quo* recently. The *title* of the plaintiffs needs no strengthening. The alleged defect is as to the boundaries. Tract No. 2, conveyed in said deed is described as "A tract lying on both sides of Bent Creek, and beginning on a maple tree and runs west 100 poles to a small chestnut tree, thence west 10 poles to a stake, thence east 100 poles to a stake, thence north 100 poles to the beginning, containing 100 acres, more or less." A description 100 poles west to a stake, thence 10 poles west to a stake, thence 100 poles east to a stake, is palpably an error, and the surveyor testified that such boundaries would not connect—of course. The Court thereon charged correctly: "In arriving at the boundary of a tract of land, when you come to consider all the evidence, if you are satisfied that a mistake has been made in the call of a deed from all the evidence, then it will be your duty to correct that mistake. For instance, if the call of the deed is for north, when it is manifest that it ought to be south, it is the duty of the jury to correct the mistake, and run south, and so with any other call as to course and distance. It is the duty of the plaintiff to satisfy you, when he claims under color of title, not only of his possession, but of the extent of his possession, and the deed is the evidence of the extent of that possession there as it is written in the face of it, or as the same may be corrected upon the evidence, in accordance with the principles

I have already laid down to you." This charge is fully sustained by *Higden v. Rice,* 119 N. C., 623, and cases there cited.

The evidence here relied upon to correct these boundaries is the following: In the above deed from Sumner, Sheriff, to Brooks (1869), there is, besides the above defective description (which, being specific, would control were it not defective), this further description, "being the land sold by William Case to W. L. Henry." The specific description being unintelligible and plainly deficient, we can clearly resort to the boundaries of said tract as set out in the deed from Case to Henry, which are thus referred to, and made a part of a conveyance from Sumner, Sheriff, to Brooks. This does not make the deed of Case to Henry any part of the plaintiff's chain of title, but the reference thereto incorporates the boundaries therein into Sumner's deed to Brooks. *Id certum est quod certum reddi potest.* If Case's deed to Henry had been registered, there would be no trouble, but being lost, it was competent for any one who knew the boundaries to testify what they were. The said deed from Case to Henry having been lost, William Case, the grantor therein, re-executed the same, adding the following memorandum: "The above is a duplicate of a deed heretofore executed by me to William L. Henry, and his heirs, for the said lands, which deed was lost before it was registered. This is a duplicate of the same tenor and date (15 May, 1855), as near as I can make it. Wm. Case." This deed was duly probated and registered in 1887, and is set up in defendant's answer.

Upon the above evidence, his Honor charged: "If you find that the deed from William Case to W. L. Henry was made and executed in 1855, and that the deed that has been introduced as a true copy or duplicate is a deed of re-execution of the boundaries contained in the deed of 1855, then the description in the deed from Case to Henry would be in-

corporated in the deed from Sumner, Sheriff, to Brooks. It is the duty of the plaintiffs to satisfy you that this is the deed, or a duplicate of the deed, of 1855, before you can incorporate the boundaries in the Sheriff's deed." This is supported by *Hemphill v. Annis,* 119 N. C., page 516; *Euliss v. McAdams,* 108 N. C., 511; *Farmer v. Batts,* 83 N. C., 387; *Cox v. Hart,* 145 U. S., 376.

Now that, since the Act of 1885, a deed is not color of title till registered, the reference in a deed to boundaries contained in an unregistered deed, of course, can not be incorporated into the registered deed by such reference. But, in 1869, when the deed of Sumner, Sheriff, to Brooks was executed, an unregistered deed was color of title, and therefore a reference to boundaries in such unregistered deed could be made part of a subsequent conveyance of the same land. It was incumbent upon the plaintiffs to satisfy the jury that such were the boundaries in the lost deed. It is not a question of title, but of boundaries, and hence a decree of re-execution was not necessary, nor is it material that there is no seal to the re-execution of the paper. It is pleaded in defendant's answer. The boundaries of this tract No. 2, set out in the re-executed deed are, "Lying on both sides of Bent Creek, and beginning on a maple and runs west 100 poles to a small chestnut tree, thence south 100 poles to a stake, thence east 100 poles to a stake, thence north 100 poles to the beginning, containing 100 acres, more or less." The only difference between this boundary and that in the deed of Sumner, Sheriff, to Brooks is "thence south 100 poles to a stake," in lieu of "thence west 10 poles to a stake." The acreage is the same, and the surveyor testified that this description from the re-executed deed of Case to Henry would exactly correspond with the boundaries of the tract claimed by the plaintiffs. Such corrections have been often allowed.