SARAH MAY v. MANUFACTURING AND TRADING COMPANY.

(Filed 3 December, 1913.)

1. Limitation of Actions—Adverse Possession—State's Title—Evidence—Marked Lines.

One relying solely upon adverse possession and without color of title to establish his title to lands in controversy must show title out of the State by actual possession for thirty years, not necessarily continuous occupancy of the property, but of a hostile character sufficiently definite and observable to apprise the true owner that his property rights have been invaded and to the extent of the adverse claim. And where there is a physical occupation with claim extending to certain marked boundaries, there must be some evidence tending to connect such occupation with the boundaries claimed or some exclusive control or dominion over the unoccupied portions of the land.

2. Trials—Expression of Opinion by Court—Deeds and Conveyances—Acreage—Evidence.

In an action of trespass, involving title to lands, it appeared that to locate the land in accordance with plaintiff's contention the boundaries would include 60 acres, whereas the successive deeds he relies on to show paper title purports to convey 50 acres only; and under the boundaries contended for by the defendant, 50 acres would be included, according to the acreage expressed to be conveyed in plaintiff's deeds; on the facts presented: *Held*, this discrepancy between the number of acres embraced under the boundaries contended for by plaintiff and the number of acres stated in his deeds, under the circumstances, was a relevant circumstance to be passed upon by the jury; and the charge of the court that it would be of no great value as an aid to the jury, was an expression of opinion forbidden by the statute.

APPEAL by defendant from *Cline, J.*, at June Term, 1913, of BURKE.

Civil action to recover damages for trespass to realty, involving also an issue as to title. The plaintiff introduced the following deeds:

1. Deed from H. H. Walton and wife to Alex Sisk, dated 4 October, 1899, containing the following description: Beginning on a pine and runs south 85 east 60 poles to a chestnut; thence south 70 east 60 poles to a white oak; thence north 80 poles to

a stake; thence west 120 poles to a·stake; thence south 50 poles
to the beginning, containing 50 acres, represented on the an-
nexed plat under its calls of course and distance by the letters
a, b, c, d, e.

2. Deed from Alex Sisk and wife to William Maloney, dated
18·November, 1901, containing substantially the same descrip-
tion and calling for same acreage; 50 acres.

3. Deed from William Maloney and wife to Sarah A. May,
dated 11 May, 1903, containing the following description:  Be-
ing a tract of 50 acres, more or less, beginning on a pine on the
south side of a road and runs east 60 poles to a chestnut; same
course 60 poles to a large white oak; thence north 80 poles to a
black oak; thence west 120 poles to a stake; thence south to the
beginning, being a tract of land bought of H. H. Walton by
Alex Sisk and conveyed by Sisk to William Maloney and wife,
which said tract lies and is situated on one prong of Hall's
Creek, reference hereby made to deeds to said Walton and Sisk
for more specific calls and boundaries, represented on the an-
nexed plat according to the calls by· course and distance by
the figures 1, 2, 3, 4.

Plaintiff then offered evidence tending to show title out of the
State, and also that plaintiff and her more immediate grantors

had occupied and possessed the property covered by the above deeds for seven consecutive years next before action brought. There was also evidence tending to show the cutting of timber, complained of, by defendant in a lot of woodland in the northeastern part of the land between the lines 3 and 4 and d and e near the eastern boundary as claimed by plaintiff. It was admitted on the argument here that the deed from William Maloney and wife to plaintiff covered the land in controversy; that the deeds from Walton and wife to Sisk and from Sisk and wife to Maloney did not cover the land in the calls by course and distance, unless their correct location was made to embrace the *locus in quo* by marked and recognized lines and corners.

The annexed cut is inserted as an aid to a proper understanding of the point presented.

The jury rendered the following verdict:

1. Has the defendant trespassed and cut timber on the lands of the plaintiff, as alleged in the complaint? Answer: Yes.

2. If so, what damages has plaintiff sustained thereby? Answer: $138.

Judgment on the verdict; and defendant excepted and appealed.

*J. T. Perkins for plaintiff.*
*Avery & Ervin for defendant.*

HOKE, J., after stating the case: The plaintiff, relying in great measure on showing title by seven years adverse occupation of land under color, was required to prove title out of the State, and endeavored to meet this requirement by showing thirty years adverse possession and also by evidence tending to prove that the *locus in quo* was embraced within a grant of the State to Erwin and Greenlee, bearing date in 1795, and both phases of the inquiry were submitted to the jury on the issue as to plaintiff's title.

Adverse possession for thirty years is one of the recognized methods of showing title out of the State, and it is not necessary to prove that such possession has been continuous one year with another, and, in cases coming within the former law, it

was not required to show any privity of estate between the different occupants, this last position having been changed by our statute on the subject and as to causes coming within its provisions. *Phipps v. Pierce,* 94 N. C., 518; *Price v. Jackson,* 91 N. C., 11-15; Revisal, sec. 380. The possession referred to, however, within the meaning of the principle, is actual possession, not necessarily continuous occupation of the property, but there must be some possession of a hostile character sufficiently definite and observable to apprise the true owner that his proprietary rights are being invaded, and of the extent of the adverse claim.

Where one is in possession under color of title, having definite lines and boundaries, the calls and descriptions of the deed may be sufficient, but where there is no deed or color giving description of the property, there actual possession must be shown. It is not always required for this purpose that there should have been an inclosure or a clearing defining the full extent of the claim. As indicated by the statute, it may be sufficient to show possession "ascertained and identified under known and visible lines and boundaries." Revisal, sec. 380. But when it is sought to extend the effect of an adverse occupation beyond an actual inclosure or clearing and up to marked lines and boundaries, there must be some evidence tending to connect the physical occupation with the boundaries claimed or some exclusive control and dominion over the unoccupied portion sufficiently definite and observable, as stated, to apprise the true owner of the extent of the adverse claim. *Davis v. McArthur,* 78 N. C., 357; *Wallace v. Maxwell,* 32 N. C., 110; *s. c.,* 29 N. C., 135-137; *Bynum v. Thompson,* 25 N. C., 578; *Ill. Sled Co. v. Belot,* 109 Wis., 408; *De Frieze v. Quint,* 94 Cal., 653; *Wade v. McDougle,* 59 W. Va., 113; *Porter v. Kennedy,* 225 S. C., 354.

In *Bynum v. Thompson* the correct principle is stated as follows: "It is admitted that, upon a long possession, all necessary assurances may and ought to be presumed. But the question is, What is possession for that purpose? Plainly, it must be actual possession and enjoyment. It is true, indeed, that if one enters into land under a deed or will, the entry is into the

whole tract described in the conveyance, *prima facie,* and is so deemed in reality, unless some other person has possession of a part, either actually or by virtue of the title. But when one enters on land without any conveyance or other thing to show what he claims, how can the possession by any presumption or implication be extended beyond his occupation *de facto?* To allow him to say that he claims to certain boundaries beyond his occupation, and by construction to hold his possession to be commensurate with the claim, would be to hold the ouster of the owner without giving him an action therefor. One cannot thus make in himself a possession contrary to the fact."

The case of *Smith v. Bryan,* 44 N. C., 180-182, in no wise militates against this principle; on the contrary, serves the better to illustrate it; the evidence in that case tending to show clearing and exercise of control up to the known and visible lines and boundaries. On careful examination of the record, we fail to find evidence in the facts, as now stated, tending to connect the earlier and actual occupation or possession, relied upon by plaintiff to show title out of the State, with the lines and boundaries in the northeastern portion of the land claimed and necessary to cover the *locus in quo.* There is testimony of long possession at an old house place in the western part of the tract and a clearing of several acres around it, but there is nothing to connect such an occupation with the lines referred to. There seems to be no satisfactory evidence of marks through that woodland of sufficient age to answer the requirement. The witness Denton, a surveyor, said he observed some marked lines out there, on a survey made by him something like eight or nine years before the trial, and they seemed to be fifteen or twenty years of age. Marks, therefore, which of themselves could have had no connection with the old settlement in the western part of the plat, where the clearing was, and we find no evidence of any exercise of control or dominion of the unoccupied portion of the land in any way connected with the occupants of the old clearing or the title they professed to assert. On this phase of the inquiry, therefore, we must hold there was reversible error in allowing the jury to determine title out of the State by adverse

possession and by reason of an old settlement and clearing on the western portion of the land, when there was not color of title defining the limit of the claim and no evidence tending to extend the force and effect of such occupation to the woodland on the eastern part of the land, and which was necessary to include the *locus in quo*.

Again, in the effort to establish title in herself by seven years adverse possession under color, the immediate deed to plaintiff was insufficient for the purpose, being only six years old at the time of action brought, and it was necessary, therefore, for plaintiff to show that one or both of the preceding deeds, under which she claimed, covered the land in controversy. The plaintiff contended and offered evidence tending to show that the northern boundary of these two preceding deeds was the line 3-4, and which would include the land in dispute, while defendant contended that the true location was the line d-e, as indicated by the course and distance of the deeds, and which would not include the land.

All of these deeds purported to convey 50 acres. If located as plaintiff contended, they would include 60 acres, and if as defendant claimed, the quantity would be in accord with the deeds, and defendant referred to this excess of acreage as a circumstance in support of its position, and asked his Honor to so instruct the jury. The court responded to the request, but in doing so, among other things, said: "I will state very frankly that I do not think the acreage is of so great value to aid you in the determination of this location, but you can consider it if it is of any aid according to your finding," etc. His Honor may have been correct in his estimate, but if it were a relevant circumstance at all, and it has been so held in cases of disputed boundary (*Baxter v. Wilson*, 95 N. C., 137), the question of its weight in value, under our statute, was for the jury, and not for the court. For the errors indicated, the defendant is entitled to a new trial of the cause, and it is so ordered.

New trial.