TAYLOR JACOBS ET AL. v. RILEY WILLIAMS ET ALS.

(Filed 4 April, 1917.)

**1. Limitation of Actions—Possession—Dower—Heirs at Law—Title—State.**

The possession of the widow under dower in the lands of her husband's estate may be tacked to that of her husband for the purpose of perfecting title in the heir claiming by adverse possession under the deed to his ancestor as color of title; and when sufficient for twenty-one years will take the title out of the State.

**2. Same—Adverse Possession—Continuity.**

Evidence in this case of getting turpentine from the *locus in quo*, cultivating the lands, etc., on the entire tract, by the grantee under the deed, relied upon as color, also by the widow after his death, as to her dower and other lands, and by the heirs at law, claiming title by continuous adverse possession for more than twenty-one years in all, is held sufficient to take the title out of the State.

CIVIL ACTION, tried before *Connor, J.,* at September Term, 1916, of PENDER.

This is an action to recover land. The plaintiffs are the heirs at law of Matthew Jacobs and claim title by adverse possession.

They introduced a deed covering the land in controversy from Thomas Jacobs to Matthew Jacobs of date 10 September, 1840, and offered evidence tending to prove that their ancestor, the grantee in said deed, had continuous possession of said land from the date of the deed until his death, about 1858, and claimed and used it as his own

After his death dower was allotted in said land to the widow of Matthew Jacobs, Eliza Jacobs, at December Term, 1858, of the Court of Pleas and Quarter Sessions.

Evidence was also introduced tending to prove that the widow remained in possession of the land after the death of her husband until her death in 1900, and that during a part of the time the plaintiffs were in possession with her.

The widow, Eliza Jacobs, afterwards married William Williams, the date not stated.

In 1860, June 2, W. A. Lamb executed a deed to William Williams covering the land, and it is under this deed the defendants claim.

On 1 June, 1897, William Williams conveyed a part of said land to one of the defendants, and a part to another defendant.

The defendant offered evidence tending to prove that Eliza Jacobs died in 1899 and that they have been in the adverse possession of said land since that time.

An action was commenced by the plaintiffs against the defendants to recover said land, 4 February, 1907, in which judgment of nonsuit was entered at January Term, 1910, and this action was commenced within one year thereafter.

The defendants moved for judgment of nonsuit upon the ground that there was no evidence of twenty-one years adverse possession under color in the plaintiffs, and, therefore, it had not been proven that title was out of the State, which was overruled, and the defendants excepted. There are also several exceptions to the charge, but all of them, except one to a statement of an agreement by counsel as a misapprehension, are on the ground there was no sufficient evidence to justify the charge given.

The jury returned the following verdict:

1. Are the plaintiffs, or any of them, the owners and entitled to the possession of the land described in the complaint as the Matthew Jacobs land outside the dower? Answer: "Yes."

2. Are the plaintiffs, or any of them, the owners and entitled to the possession of the land described in the complaint as the dower of Eliza (Williams) Jacobs? Answer: "Yes."

3. Are defendants in the unlawful possession of either of said tracts of land? Answer: "Yes."

4. What sum, if any, are plaintiffs entitled to recover of defendants as damages? Answer: "One penny."

5. Did Eliza Williams die seven years or more before 4 February, 1907? Answer: "No."

Judgment was entered upon the verdict in favor of the plaintiffs, and the defendants excepted and appealed.

*R. G. Grady and C. D. Weeks for plaintiffs.*
*Bland & Bland and C. E. McCullen for defendants.*

ALLEN, J. The only question presented by the appeal is whether there is any evidence that the plaintiffs and those under whom they claim have had an adverse possession under color for twenty-one years, and in considering this question we must accept the evidence of the plaintiffs as true, and must give to it the construction most favorable to them.

As to the part of the land covered by the dower, the evidence showing title in the plaintiff is too clear to admit of debate.

The deed to the ancestor of the plaintiffs, dated in 1840, is color of title, and the uncontradicted evidence is that the grantee in this deed entered into possession of the land, used it openly as his own until his death in 1858, and that after the allotment of dower in the same

year to his widow she remained in possession, exercising acts of ownership until her death, which the evidence of the plaintiffs shows was in 1900.

The possession of the widow is not only not adverse to the heir, but it may be tacked to the possession of the ancestor for the purpose of perfecting title in the heir.

This question was fully considered and decided in *Atwell v. Shook,* 133 N. C., 391, in which the Court says: "It is clear that the possession of the heir may be added to the possession of the ancestor to complete the twenty years which will bar the action. We do not understand this to be controverted; but the defendant says that the possession of the widow was not the possession of the heirs, but was adverse to them. This is the point in the case. We agree with his Honor that the question is not whether the widow took any title by the allotment of the homestead, but whether she claimed under the heirs, thereby making her possession their possession. Certainly her possession could not be adverse to the heirs, and this is so without regard to the question, discussed before us, as to the effect of the allotment of the homestead. If instead of taking a homestead she had taken a dower in her husband's land, and in the allotment the 3 acres to which he had no paper title were included therein, and she remained in possession, certainly such possession would inure to the benefit of the heirs, being an elongation of the husband's title or estate. This would not be upon the principle that she acquired any new or independent right by the allotment of the dower, but that she claimed under the husband and thereby her possession inured to the benefit of the heirs."

There is also evidence of an adverse possession of twenty-one years of the land outside of the dower.

John Jacobs, one of the plaintiffs and an heir, testified that he was born on the land in 1843, and lived there from his earliest recollection until he was 19 or 20 years of age; that they "tended turpentine and farmed" and "worked the whole place where there was any pine"; that after he left the place he went back from time to time, and Eliza Jacobs, the widow, "was cultivating all the cleared land, all of the 175-acre tract."

This is evidence of a possession in the ancestor and in the heir from 1840, the date of the deed to the ancestor, to 1862 or 1863, more than twenty-one years.

Melvin Jacobs, another plaintiff and heir, testified that he was not two years old when his father died; that he worked on the land from

the time he "was big enough" till he "was grown," and lived there till he "was about 21"; that he split rails, cut firewood, and hauled straw off any part of the land not included in the dower.

If the witness was born two years before the death of his father and lived on the land until he was 21, he lived on the land nineteen years after the death of his father, which, added to the possession of his father from 1840 to 1858, or eighteen years, would furnish evidence of possession in the heirs and their father of thirty-seven years.

It, therefore, appears that there is evidence of twenty-one-years adverse possession of the land outside of the dower as well as of that included therein, without passing on the effect on the other land of the possession of the dower by the widow.

Nor is it necessary to consider the character of the possession by Williams after his marriage with the widow of Matthew Jacobs, or of the possession of the defendants, as these questions were submitted to the jury under a charge free from objection.

We have considered all of the exceptions and find

No error.