JEREMIAH NEWKIRK v. HUGH PORTER, HENRY NEWTON, HANNAH NEWTON CARR, ELIZABETH HIGHSMITH, HATTIE STRINGFIELD, CALLIE NEWKIRK, ROSA NEWKIRK, HATTIE BEATTY, WALTER HIGHSMITH, HAYES NEWTON, CARRIE HERRING, HATTIE NEWTON HIGHSMITH, GENEVA HENDERSON, WILLIE HERRING, AND ANNIE TODD.

(Filed 30 January, 1953.)

**1. Adverse Possession § 1—**

Adverse possession for seven years under color of title, G.S. 1-38, or for twenty years without color of title, G.S. 1-40, ripens title in the possessor.

**2. Adverse Possession § 3—**

Adverse possession sufficient to ripen title in the possessor must be actual, open, visible, notorious, continuous and hostile to the true owner's title and to all persons for the full statutory period.

**3. Adverse Possession § 6—**

Claimant's possession must be continuous and uninterrupted for the full statutory period in order to ripen title in him, since if there is a break in his possession, the constructive possession of the true owner interferes and destroys the effectiveness of the prior possession.

**4. Adverse Possession § 7—**

The requirement of continuity of possession does not mean that one person must be in possession for the full statutory period, since the possessor may tack his possession with the possession of any person or persons with whom he is in privity, including the possession of his grantor when the deed embraces the property in dispute, or the possession of his ancestor from whom his title is cast.

**5. Same—**

Where the description in the grantee's deed does not embrace the land in dispute, the grantee ordinarily is not entitled to tack the possession of his grantor, since in such instance the grantee's possession is generally independent of the deed and is adverse to his grantor as well as all other persons.

**6. Boundaries § 3b—**

Where the calls in a deed are inconsistent, the general rule is that natural objects and monuments control courses and distances, and ordi-

narily another's line, when called for and if known and established, is a monument within the meaning of the rule.

**7. Adverse Possession §§ 6, 7—Where trustee's deed is chain in claimant's title, failure of evidence of conveyance to trustee creates hiatus.**

Plaintiff offered in evidence a deed to his father registered more than twenty years prior to the institution of the action, and trustee's deed to the purchaser at foreclosure, executed less than seven years prior to the institution of the action, and deed from such purchaser to plaintiff. *Held:* The failure of evidence of a transfer of the legal title by plaintiff's father to the trustee creates a *hiatus,* so that the evidence establishes continuity of possession only from the date of the execution of the trustee's deed, which, being less than seven years, is insufficient to be submitted to the jury either upon a claim of adverse possession for twenty years or for seven years under color.

**8. Adverse Possession § 7—**

Plaintiff may not assert that title by adverse possession acquired by his father prior to his death passed to plaintiff under deeds from a trustee in a deed of trust when plaintiff introduces no evidence of conveyance of the legal title by his father to the trustee. Further, in this case, the record failed to disclose on what date plaintiff's father died, and therefore failed to fix the duration of the father's possession.

**9. Appeal and Error § 8—**

An appeal will be determined in accordance with the theory of trial, and therefore where the case is tried upon the theory of adverse possession, the cause may not be retained on the theory of a processioning proceeding.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Morris, J.,* March Term, 1952, of PENDER.

Civil action between adjoining landowners involving claim of title by adverse possession. In dispute is a strip of land about 224 feet wide lying between the location of the dividing line as contended by the plaintiff and its location as contended by the defendants. The strip in dispute extends in a straight east-west course for more than a mile and contains about 30 acres.

The main body of the plaintiff's land, a tract of "101.7 acres, more or less," lies north of the disputed area; the defendants' tract of "121 acres, more or less" lies to the south.

The plaintiff claims under or in connection with these deeds which describe by metes and bounds the 101.7-acre tract: (1) deed of H. B. S. Garriss and another to W. M. Gurganous dated 7 January, 1884, filed for registration 28 December, 1885; (2) deed made by W. M. Gurganous and wife to J. M. Newkirk (father of the plaintiff) dated 16 August, 1910, filed for registration 18 August, 1910; (3) deed made by W. T. Wallace, Trustee, to C. L. Carter and William Brice, dated 3 December, 1942, filed for registration 10 December, 1942; and (4) deed made by C. L. Carter

and wife and W. M. Brice and wife to Jeremiah Newkirk and wife, Mazie Newkirk, dated .... October, 1943, filed for registration 4 October, 1943. In connection with the foregoing record title the plaintiff testified that W. T. Wallace and Carter and Brice "both owned the land since my father died. They had a note on it and . . . a mortgage on it. . . . My daddy did not sell it to me, but Mr. Carter did."

The defendants claim title to the 121-acre tract as heirs at law of Edmond Newton, who died in 1907. They offered in evidence the following unbroken paper title running back to 1850: (1) deed made by Mary Shaw to Elizabeth Innis, dated 26 September, 1850, filed 28 January, 1891, with the north-boundary call being as follows: "Beginning at a water oak in the Creek; running thence E 330 poles to a stake in the back line; . . ."; (2) deed of Elizabeth Innis and another to Edmond Newton dated 19 June, 1871, filed 17 September, 1889, with the north-boundary call being as follows: "Beginning at a red oak near the run of Moore's Creek, running N. 88 W. 375 poles to a stake in the back line; . . ." The evidence in connection with the court survey and map thereof tends to show that the northern boundary, according to defendants' contention, has a fixed terminus on Moore's Creek "at a red oak now down," and runs thence S. 86 E. 6,187 feet to its eastern terminus.

Here it is to be noted (1) that the defendants hold under the senior record title and (2) that the plaintiff's deed calls for the defendants' line as the boundary between the two tracts of land.

It also appears from the court survey and map thereof that when the courses and distances set out in the plaintiff's deed are run out on the ground, the plaintiff's north-south lines extend across the entire breadth of the defendants' tract and even beyond its outermost southern boundary, so as to envelop all the defendants' tract except a small corner consisting of a few acres on the eastern end thereof.

However, the plaintiff made no contention that his land swallowed up the defendants' as indicated by the course and distance calls in his deed. The evidence discloses that prior to and at the time of the survey the plaintiff contended that the true dividing line was located about 224 feet south of and parallel to the location as contended by the defendants. As to the location on the ground of the line which the plaintiff contends is the true dividing line, his surveyor, Henry G. Vann, testified that in running the line he started at the western terminus on Moore's Creek near a big water oak that was marked, ". . . it had been marked several times, blazed for some purpose." From this beginning point on the Creek, the line was run south 86 E 138 feet to the white oak (which was treated as a line tree and used for the purpose of fixing the western terminus on Moore's Creek) and continuing the same course an over-all distance of 6,187 feet to a point where the distance in the deed "gave out." The entire distance

of this line is through uncleared woodland, and after passing the white oak which is located 138 feet east of the western teminus of the line on Moore's Creek, no other marks were found along the line for a distance of approximately 5,000 feet (except perhaps a stump), and then two or three marked gums were picked up.  As to this, surveyor Vann said: "5,000 feet East of Moore's Creek there was a branch holly and big gums, and there was a very plainly marked line through those gums when I got over away from the branch east."

Early in the trial the plaintiff conceded in response to an inquiry of the court that his claim of ownership in the disputed area is based on adverse possession, and in the brief filed here on appeal the plaintiff states that his claim of ownership of the disputed area "is based on adverse possession for more than 20 years."

This action was instituted 9 November, 1949.

The plaintiff offered evidence tending to show that his father and his father's grantor, W. M. Gurganous, for more than 40 years claimed the land up to the line as contended by the plaintiff; that the defendants' ancestor, Edmond Newton, treated it as the dividing line; that the main cleared portion of plaintiff's land near the western end of plaintiff's tract extends down into and reaches about two-thirds the distance across the disputed area, embracing a small acreage thereof; that this land was cleared by W. M. Gurganous and has been cultivated some 40 years by the plaintiff, his father (J. M. Newkirk), and W. M. Gurganous; that a tobacco barn is located on the disputed area and a dwelling house partially thereon; that the barn was built during the period his father claimed ownership, more than 20 years prior to the commencement of this action, and the dwelling by the plaintiff some 10 or 15 years ago.

Other evidence of possession of the disputed area—principally the small cleared portion thereof—on the part of the plaintiff and some of his predecessors in title is omitted as not being pertinent to decision in view of the theory of the trial below.

The defendants' motion for judgment as of nonsuit, made at the close of the plaintiff's evidence and renewed at the conclusion of all the evidence, was allowed, and from judgment based on such ruling the plaintiff appealed.

*Rountree & Rountree and Wyatt E. Blake for plaintiff, appellant.*
*Moore & Corbett for defendants, appellees.*

JOHNSON, J.  The single question presented by this appeal is whether the plaintiff made out a *prima facie* case of title by adverse possession to the disputed strip of land.

In this jurisdiction title to land may be acquired by the requisite acts of adverse possession (1) under color of title for a period of 7 years, G.S. 1-38, or (2) under claim of right, without color of title, for a period of 20 years, G.S. 1-40. See 1 Am. Jur., Adverse Possession, Section 185.

In either case, in order to bar the true owner of land from recovering it from an occupant in adverse possession, the possession relied on must have been actual, open, visible, notorious, continuous, and hostile to the true owner's title and to all persons for the full statutory period. *Locklear v. Savage,* 159 N.C. 236, 74 S.E. 347. See also these cases in which the elements of title by adverse possession are specifically treated : *Price v. Whisnant,* 236 N.C. 381, 72 S.E. 2d 851; *Williams v. Robertson,* 235 N.C. 478, 70 S.E. 2d 692; *Battle v. Battle,* 235 N.C. 499, 70 S.E. 2d 492; *Locklear v. Oxendine,* 233 N.C. 710, 65 S.E. 2d 673; *Gibson v. Dudley,* 233 N.C. 255, 63 S.E. 2d 630; *Wallin v. Rice,* 232 N.C. 371, 61 S.E. 2d 82; *Ramsey v. Nebel,* 226 N.C. 590, 39 S.E. 2d 616; *Alexander v. Cedar Works,* 177 N.C. 137, 98 S.E. 312; *May v. Mfg. & Trading Co.,* 164 N.C. 262, 80 S.E. 380.

Continuity of possession being one of the essential elements of adverse possession, in order that title may be ripened thereby, such possession must be shown to have been continuous and uninterrupted for the full statutory period. *Perry v. Alford,* 225 N.C. 146, 33 S.E. 2d 665; *Ward v. Herrin,* 49 N.C. 23; *Holdfast v. Shepard,* 28 N.C. 361; 1 Am. Jur., Adverse Possession, Sec. 148. This for the reason that if the possession of the adverse claimant be broken, the constructive possession of the true owner intervenes and destroys the effectiveness of the prior possession. *Hayes v. Lumber Co.,* 180 N.C. 252, 104 S.E. 527; *Williams v. Wallace,* 78 N.C. 354; *Malloy v. Bruden,* 86 N.C. 251.

However, in order to fulfill the requirements as to continuity of possession, it is not necessary that an adverse possession be maintained for the entire statutory period by one person. Continuity may be shown by the tacking of successive possessions of two or more persons between whom the requisite privity exists. 1 Am. Jur., Adverse Possession, Sec. 151. And, as stated by *Hoke, J.,* in *Vanderbilt v. Chapman,* 172 N.C. 809 (812), 90 S.E. 993, "The privity referred to is only that of possession and may be said to exist whenever one holds the property under or for another or in subordination to his claim and under an agreement or arrangement recognized as valid between themselves." See also *Johnston v. Case,* 131 N.C. 491, 42 S.E. 957; Mordecai's Law Lectures, Second Ed., p. 688; Anno.: 17 A.L.R. 1128.

Accordingly, a grantee claiming land within the boundaries called for in the deed or other instrument constituting color of title, may tack his grantor's possession of such land to that of his own for the purpose of

establishing adverse possession for the requisite statutory period. *Vanderbilt v. Chapman, supra.*

Similarly, the adverse possession of an ancestor may be cast by descent upon his heirs and tacked to their possession for the purpose of showing title by adverse possession. *Vanderbilt v. Chapman, supra; Barrett v. Brewer,* 153 N.C. 547, 69 S.E. 614; Mordecai's Law Lectures, Second Ed., p. 688. See also *Jacobs v. Williams,* 173 N.C. 276, 91 S.E. 951; *Land Company v. Floyd,* 167 N.C. 686, 83 S.E. 687; 1 Am. Jur., Adverse Possession, Sec. 153.

But the rule with us is that a deed does not of itself create privity between the grantor and the grantee as to land not described in the deed but occupied by the grantor in connection therewith, and this is so even though the grantee enters into possession of the land not described and uses it in connection with that conveyed. *Boyce v. White,* 227 N.C. 640, 44 S.E. 2d 49; *Blackstock v. Cole,* 51 N.C. 560. See also *Simmons v. Lee,* 230 N.C. 216, 53 S.E. 2d 79; *Ramsey v. Ramsey,* 229 N.C. 270, 49 S.E. 2d 476; 1 Am. Jur., Adverse Possession, Sec. 156; Anno.: 17 A.L.R. 2d 1128. Nothing else appearing, the mere noninclusion of the disputed area in the description raises the inference that the grantee claimed it independently and began a holding which was adverse to the grantor as well as to other persons. *Blackstock v. Cole, supra.*

Also, where the calls for location of boundaries to land are inconsistent, the general rule is that natural objects and artificial monuments control courses and distances. *Nash v. Wilmington and W. R. Co.,* 67 N.C. 413, 418. And in this connection, another's line called for, if known and established, is usually treated as a monument. *Jennings v. White,* 139 N.C. 23, 51 S.E. 799; Mordecai's Law Lectures, Second Ed., p. 814; 8 Am. Jur., Boundaries, Sections 4, 51, and 56.

In the case at hand it is observed that the defendants have the senior record title, and that the plaintiff's deed calls for the defendants' northern boundary as the dividing line between the two tracts. Also, the defendants' evidence tends to give their northern boundary a fixed location on the ground at about where they contend it is located.

The situation presented by these factors no doubt prompted the plaintiff to concede in the court below, and stipulate in brief on appeal, that his claim of ownership of the disputed area is based on adverse possession. This concession in the light of the circumstances under which it was made would seem to support the conclusion that the plaintiff intended thereby to concede that the disputed area is not covered by the description appearing in his deed, and that he intended to claim title thereto by adverse possession based on the theory that he and his predecessors in title, including his father, have occupied the undescribed disputed area in connection with the land actually described in the paper title for more than 20 years.

As to this, however, nothing else having been made to appear, the transfers *sub silento* made by W. T. Wallace, Trustee, to Carter & Brice, and by the latter to the plaintiff, appear to be insufficient on the record as presented to permit the tacking of the possession of the plaintiff's father to that of his own with respect to the undescribed disputed area (*Blackstock v. Cole, supra;* Annotation: 17 A.L.R. 2d 1128, p. 1160), and particularly is this so in view of the fact that the plaintiff's record title to the 101.7-acre tract as offered in evidence shows no conveyance from the plaintiff's father, J. M. Newkirk, to W. T. Wallace, Trustee. Thus, in view of this *hiatus,* the plaintiff's paper title, for present practical purposes, has its inception in the deed of W. T. Wallace to Carter and Brice dated 3 December, 1942. See *Meeker v. Wheeler,* 236 N.C. 172.

Also, it is further noted that the record discloses no evidence tending to show that Carter and Brice exercised any acts of possession during the period of their claimed ownership, which lasted about a year.

It follows, then, that by reason of these *hiatuses* the plaintiff failed to show continuity of possession for the requisite period of 20 years. *Ward v. Herrin, supra.*

Moreover, since these *hiatuses* appear within 7 years next preceding the date of the commencement of the action, it also follows that if it should be conceded *arguendo* that the plaintiff's paper title, when considered on the *prima facie* level, is sufficient to support the inference that it embraces the disputed area and constitutes color of title, even so, the plaintiff failed to show the requisite continuity of possession necessary to ripen title under colorable claim.

Nor was the plaintiff entitled to go to the jury on the theory that his father acquired title to the disputed area by adverse possession prior to his death (*Brite v. Lynch,* 235 N.C. 182, 69 S.E. 2d 169) and that the ripened title thereto passed to the plaintiff under the successive deeds appearing in his paper title. It is enough to say that the *hiatus* in the plaintiff's paper title defeats recovery on this theory. *Meeker v. Wheeler, supra.* Besides, neither the pleadings nor the theory of the trial below encompass this theory. Nor does the record disclose when the plaintiff's father died. Thus the record leaves indefinite and without fixed period of duration the time during which it may be inferred from plaintiff's evidence that his father exercised acts of possession within the disputed area.

Nor does the record justify retaining the cause for trial on the theory of a processioning proceeding under G.S. 38-1 *et seq.* The case was both cast by the pleadings and tried below on the other theory. The theory of the trial prevails on appeal. *Thrift Corp. v. Guthrie,* 227 N.C. 431, 42 S.E. 2d 601; *Hinson v. Shugart,* 224 N.C. 207, 29 S.E. 2d 694.

In this state of the record, we do not reach for decision the question whether the character of the acts of ownership and possession relied on

by the plaintiff meet minimum requirements necessary to ripen title by adverse possession, either as to the whole of the disputed area or the portions which appear to be cleared and under cultivation and on which permanent structures have been erected.  See *Ramsey v. Nebel, supra; Wallin v. Rice, supra.*

We observe in passing that counsel who appeared for the plaintiff in this Court were not his original counsel and hence are not responsible for the theory of the case as originally cast below.

On the record as presented the evidence was insufficient to show title by adverse possession to the disputed area.  The judgment below is
Affirmed.

PARKER, J., took no part in the consideration or decision of this case.