UNITED STATES of America, Plaintiff,

v.

Cecil A. McCONNELL, et al.,
Defendants.

Civ. A. No. 81–0222–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

June 12, 1985.

E. Montgomery Tucker, Asst. U.S. Atty., Roanoke, Va., for plaintiff.

William J. Sturgill, Norton, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Plaintiff filed this suit alleging that defendants trespassed upon lands owned by the United States of America (USA) granted to USA by deed dated April 1, 1936 by Virginia Coal and Iron Company. Jurisdiction is pursuant to 28 U.S.C. § 1345. USA seeks declaratory relief asserting that it is the fee simple owner of the property in dispute and moves that defendants (1) be required to remove fences, signs and other encroachments to the property, (2) pay damages for cutting trees and (3) be permanently enjoined from encroaching on the land. Defendants ask that the boundary line be established by the court and that defendants be declared the owners of the "disputed area." Both sides filed motions for summary judgment; both motions were denied. The court viewed the disputed property with counsel and representatives

of the parties on May 24, 1985 and held a nonjury trial on May 29, 1985. This case is now ready for a ruling on the merits.

## FINDINGS OF FACT

The parties stipulated that corner 24 in the line between USA and defendants is correctly located and expert witnesses on both sides gave their opinions based on the assumption that the position of corner 24 is accurate. The disputed line in this case is the course and distance between corner 24 and the location of corner 25. In the deed dated April 1, 1936, whereby the USA obtained title, the line is described as follows: "Corner 24, a point between the stumps of two (2) chestnuts called for, set a stone marked with a cross (+); $S39°45'W$ 26.24 chains, crossing a county road to corner 25, a hickory with old marks, called for, set a F.S. standard concrete post marked 652 alongside."

Cecil A. McConnell and Orville H. McConnell acquired their land by deed dated September 18, 1956 from M.D. Clay. The deed to the McConnells described the disputed line as follows: "S61°–30'E 443 feet to a hickory (gone) in gap of ridge, corner to Virginia Coal and Iron Company Land, thence with same $N41°E$ 1231 feet to a stake." Thus, there is a variation of 1°15′ between the USA deed and the McConnells' deed which, according to all the experts, is insignificant and does not create the dispute in this case. Indeed, since 1887, there have been nine conveyances in the McConnell chain of title in which the call between corners 24 and 25 is given as N41°E while the USA chain of title has listed the disputed call as S39°–45′W since 1882.

Thus, in both chains of title, the call has remained constant for approximately 100 years. Corner 25 during all these years has consistently called for a hickory in the gap of a ridge. Furthermore, the court found when it viewed the property that the corner now claimed by the government as corner 25 lies in the gap of a ridge where two gravel (unpaved) roads intersect. The

point claimed by McConnells as corner 25 is not in a gap of a ridge. If the dispute rested here, clearly the government would prevail because the line was relatively undisputed by calls for 100 years and the corner call is "in the gap of a ridge," where the USA now positions the corner.

However, McConnells' title chain is based on a survey contained in a deed dated November 18, 1844 from Joseph Hagan to Henry Ramey in which this line is described as: "Beginning at a small hickory on a dividing ridge ... N33°E 100 poles." The defendants' witness, surveyor R. Stanley Trent, uses the call N33°E from corner 24 and establishes a corner 241.70 feet from the USA corner with a call of N60.-01°W, thus constituting a triangular piece of land containing 4.27 acres. Trent is of the opinion that the land belongs to the McConells, rather than the USA. In an affidavit filed in this case, Trent testified as follows:

> We're not sure exactly that it will be 33 degrees southwest, but it would certainly closer conform to the original 1844 deed. It is conceded that the 1844 deed is not a good deed from today's standards, but it is what we had to work with then and based on overlays, it could be seen that there are certain consistencies in the deed and the fact that we not only have a call on the deed that's approximately in that direction, but we also have a description of a point which is not easily moved and that is a top of a ridge.

Trent, after sitting in court and listening to two government expert witnesses (one of whom plotted the 1844 deed to show that if the 1844 deed were followed in its entirety the McConnells would own less land) agreed with the other witnesses that the 1844 deed was unreliable. Trent also acknowledged that the 1844 survey was a magnetic compass survey which might change three or four degrees but would not change eight degrees. Trent further testified that surveys of the property at issue conducted in the late 1800's were adjusted in order to compensate for the faulty survey of 1844. Thus, Trent was of the opin-

ion that it was best to accept the present location of corner 24 as accurate and use the old 1844 call to corner 25.

Trent's opinion is flawed in three important aspects. First, the present location of corner 24, which is agreed upon, is not the location of corner 24 as per a plotting of the 1844 deed. It makes little sense to accept part of the calls of an inaccurate deed and reject the rest of it. Second, Trent concedes that there is at least a three- to four-degree error in this line added to the errors in the other calls. Third, he utilizes an obvious error to support his conclusion. In his affidavit, he says corner 25 is "a *top* of a ridge." Therefore, he says it should not be placed in a "gap" as was done in the late 1800's. The deed relied on by Trent at no time places the corner at the "top" but rather "on a dividing ridge." As this court's view of the property revealed and as the two government experts testified, corner 25 as now located by the USA is "on a dividing ridge."

The reasoning of the two government experts is more soundly based than the survey of the defendants. The court's view of the property and the lay of the land support the government's position. Therefore, the court finds that the facts favor the plaintiff in this case.

## CONCLUSIONS OF LAW

■ The McConnells claim that, under an older deed, where the tract of land interlocks with another, the elder grantee acquires constructive seisin in all the land within its boundaries. *Green v. Pennington*, 105 Va. 801, 54 S.E. 877 (1906). This is a correct statement of the law but it has no application when applied to the facts of this case. In this case, all three expert witnesses agree that when the 1844 deed is plotted in its entirety, it gives the McConnells less land than the USA actually claims and does not interlock the government lands.

■ There is conflict in this case as to the distance and course between corners 24 and 25 in the McConnell chain of title and

the USA chain of title. In Virginia Law, a course does not take precedence over a distance, nor does distance take precedence over a course, as mistakes can be made in either. *Smith v. Chapman,* 51 Va. (10 Gratt.) 445 (1853). On the other hand, a court should look to the topography of the land at the corner, the "manifest intent of the parties," and all the circumstances of the case. *Green v. Pennington,* 105 Va. at 808, 54 S.E. 877, citing *Smith v. Chapman,* 51 Va. 445.

 Defendants' surveyor, as heretofore noted, was in error in basing his opinion on an incorrect topographical interpretation when he located the corner on top of a ridge, whereas the deed he relied upon placed the corner "on a dividing ridge near a path." A divide by definition is a "dividing ridge between draining areas: Watershed." *Webster's New Collegiate Dictionary,* 334 (1977). This definition is in accord with the plaintiff's expert witnesses who testified that a divide was an area of land, not just the "top" of a ridge; therefore, the gap in the ridge also qualifies as a divide, as does the entire ridge. A "path" also would be less likely to follow the top of a ridge but would normally follow a gap. A watershed is defined as "a region or area bounded peripherally by a water parting and draining ultimately to a particular water course." *Id.* at 1324. Thus, a divide or watershed is an area and does not designate a specific area as does "gap." The metes and bounds of the 1844 deed are inaccurate and, since the hickory is gone, there is nothing in the 1844 deed relating to the topography which marks the disputed corner. The court therefore considers the intent of the parties for over 100 years to place the corner in a "gap" at a "county road" as being the best evidence of the corner. Where there is an inconsistency between natural monuments and courses and distances, generally course and distance yield to natural monument. *West Virginia Pulp & Paper Co. v. J. Natwick Co.,* 123 W.Va. 753, 21 S.E.2d 368 (1941); *Newkirk v. Porter,* 237 N.C. 115, 74 S.E.2d 235 (1953).

 Early surveys in the United States were made by running the lines on the ground according to the magnetic rather than the true meridian. The evidence in this case indicates that the 1844 deed was done in this manner. Where a magnetic meridian is used, an allowance for deviations in directions will not be permitted if natural monuments or other controlling calls can be located. *Taylor v. Fomby,* 116 Ala. 621, 22 So. 910 (1897). In this case, there is no positive evidence as to the magnitude of the magnetic variance. Trent based his survey on the old call without magnetic variance which he estimated at three or four degrees, and without the variances of the other calls. The "gap" constitutes a natural monument which controls the other evidence. It is also the best evidence of the intent of the parties.

Accordingly, an Order will be entered granting judgment to the plaintiff.