EDITH S. VANDERBILT v. S. F. CHAPMAN ET AL.

(Filed 29 December, 1916.)

### 1. Limitation of Actions—Adverse Possession—Successive Occupants—Continuity.

To ripen title to lands by adverse possession, with or without color, the claimant must show continuity of sufficient possession for the requisite statutory period, and, in case of successive occupants, some recognized connected possession between them, which may be shown by deed, will, or other writing or by parol.

### 2. Same—Evidence—Deeds and Conveyances—Color of Title.

Where title to lands is claimed through the adverse possession of successive occupants, the ownership asserted is one dependent on adverse possession, which does not require privity of title in the successive occupants, but the actual occupancy by them of the land under or for another or in subordination to his claim under an agreement or arrangement recognized as valid between themselves; and when this continuity and identity is established between a subsequent and next preceding and prior occupant adverse to the true paper title, the claimant or subsequent holder under color may avail himself of the adverse occupation of his predecessors and refer the same to the conveyance under which he claims as color.

### 3. Same—Executors and Administrators—Powers of Sale.

Where there is evidence that the one claiming title to lands by adverse possession under color directs his son, who managed his affairs, to hold possession under his deed, and by will appoints his son as his executor, who is interested therein as a devisee, and who thereafter enters and continues to remain in possession as such executor until he conveys the lands under a power conferred in the will, and that his grantees entered and remained in possession for a period sufficient under the statute to ripen the title, by counting the possession of his predecessors, it is *Held*, that the possession of the executor of the original grantee as such should be considered, and it is reversible error for the trial judge to instruct the jury, in effect, that the evidence of his possession as executor, not being in privity of title, was insufficient, and should not be counted.

CIVIL ACTION to recover possession of land and remove a cloud from plaintiff's title, tried before *Adams, J.,* and a jury, at August Term, 1916, of BUNCOMBE.

Plaintiff showed a proper paper title to a tract of 465 acres of land in said county, the title taking its rise in a State grant to David Allison in 1796, and it was admitted of record that plaintiff had a proper paper title by mesne conveyance to this 465-acre tract included within the boundaries of the Allison grant.

Defendant claimed title by adverse occupation for seven years under color of title to 169 acres of land within the boundaries of plaintiff's

tract and being that part of said tract described and contained in a deed therefor from W. E. Lance, who had a prior grant covering the property, to Richard Ledbetter, bearing date 18 May, 1893, and duly registered in Buncombe County, 18 September, same year.

On issues submitted the jury rendered the following verdict:

1. Is the plaintiff the owner in fee and entitled to the possession of the land described in the complaint and in controversy in this action, or any part thereof? Answer: "Yes."

2. Have the defendants wrongfully entered into possession of said land under the claim of title? Answer: "Yes."

3. Does the defendants' claim of title constitute a cloud upon the title of the plaintiff? Answer: "Yes."

4. What damages, if any, is the plaintiff entitled to recover? Answer: "No damages."

Judgment on the verdict for plaintiff, and defendant excepted and appealed.

*James H. Merrimon, J. G. Merrimon, and Harkins & Van Winkle for plaintiff.*

*Duff Merrick, A. Hall Johnston, and Theo. F. Davidson for defendant.*

HOKE, J. On the trial it was admitted of record that the plaintiff had a proper paper title taking its rise in a grant to David Allison for 250 acres of land bearing date 28 November, 1796.

In support of defendant's claim, they offered in evidence a deed from W. E. Lance and wife to Richard Ledbetter, covering the land in controversy and bearing date 18 May, 1893.

2. The will of said Richard Ledbetter, probated and registered 22 January, 1903, the portions of which, material to the questions presented and involved in this appeal, are as follows:

"I do hereby nominate and appoint my son, Z. T. Ledbetter, my son-in-law, M. L. Sumner, my executors of this my last will and testament, earnestly requesting them to act as such; and for the purpose of enabling them to carry out the provisions of this, my said will and testament, they are hereby vested with such parts of my estate, real and personal, as it may be necessary should be vested in them for such purpose."

And further: "It is my will and desire that my executors, as early as it may be practicable after my death, collect in all moneys due me, and that they sell off all my real and personal estate not herein devised or bequeathed, and from said moneys and proceeds pay off and discharge the legacies herein required to be paid therefrom, and any sum then remaining, after paying all costs and charges of administration and all debts due and owing by me, they shall divide. . . . " etc.

And: "In disposing of my said property, real and personal, my executors may sell at public or private sale for cash or on time, or in such way and manner as in their judgment will be best for my estate, and I do hereby invest them with authority and empower them to make all deeds and conveyances necessary to be made to complete such disposal."

3. Deed from Z. T. Ledbetter, executor of the last will and testament of Richard, to defendants, covering the land in controversy, bearing date 10 February, 1914, and registered same day.

It was shown that Z. T. Ledbetter alone qualified as executor of his father, and there was evidence on part of defendants tending to show adverse, continuous occupation of the property, asserting ownership under said deed from its date by Richard Ledbetter till his death in 1903; by Z. T. Ledbetter, his executor, claiming also under the will of his father till his own conveyance to defendants and by them till the bringing of the suit.

There was evidence on the part of plaintiffs tending to show breaks in the continuity of defendants' possession, sufficient, if established, to destroy their claim, and also that Z. T. Ledbetter, at the time he occupied after the death of his father till the sale and conveyance by himself, claimed the same as his father's executor, under the terms and provisions of the will.

Speaking to the occupation of himself and father and as to how he claimed while in possession as executor, Ledbetter, as witness for defendant, testified, among other things, as follows: That in 1893 his father, who owned the Clapp tract of land lying just north of this in controversy, had cleared and cultivated an acre or an acre and a half over the line. On that date his father bought and took a conveyance of the land in controversy from W. E. Lance who had taken a grant for it a short time before, and in making a survey for the Lance deed they ascertained that they had gone over the line and cleared an acre or an acre and a half of land on this land; that witness and father had continuously occupied and worked this clearing, through their tenants, year by year, from the date of the deed until witness, as executor, sold and conveyed to defendants. "The possession, that is, the field about which I spoke, is on both sides of this line. My father had possession on both sides of it. I was attending to a great deal of my father's business after the deed of 1893, and his instructions were to hold possession on the part of that clearing inside the W. E. Lance deed. After the date of the deed in 1893 my father's tenants held possession on until his death, and then I as executor held possession until I sold to Mr. Chapman. My father has been dead thirteen years the 19th day of January. He died 19 January, 1903. We held possession from that time until I made Mr. Chapman and Mr. Reynolds a deed. We

held possession by tenants in cultivation and had some little peach trees set out on the land. I don't think there was a year but what there was some growing crop on part of the cultivation. I instructed the tenants after I took possession to put something on each year. I was up there once a year," etc.

Upon this, the testimony chiefly relevant to the question presented, his Honor, among other things, in effect charged the jury that the will in itself was not color of title, as it did not purport to convey title to the executors, but only contained a power of sale, and that if Z. T. Ledbetter entered and held the land as executor and not as heir, such occupation by him and his tenants could not be added or tacked to the occupation by his father or referred to his claim under the Lance deed as color. "But if he took possession, as the heir at law of Richard Ledbetter, his possession as heir at law would be deemed a continuation of the color of title acquired by his ancestor, and his possession, so held, would be deemed possession under color," etc., and to this and other portions of the charge, substantially embodying the same positions, defendants duly excepted and assigned the same for error.

In order to establish title by adverse occupation there must be continuity of possession for the requisite statutory period, and, in case of successive occupants, there must be some recognized connection between them. This connection may be effected by deed or will or other writing, or it may be shown by parol. It is said that there must be a privity between the successive occupants, but this does not at all mean that there must be a privity of title. The ownership asserted is one dependent on adverse physical possession, in this instance under color. The privity referred to is only that of possession and may be said to exist whenever one holds the property under or for another or in subordination to his claim and under an agreement or arrangement recognized as valid between themselves. When the continuity and identity of possession is established between a subsequent and next preceding and prior occupant, shutting out all opportunity of interruption in favor of the true title, in such case the claimant or subsequent holder may, in connection with his own, avail himself of the adverse occupation of his predecessors and refer the same to the original entry and the color of title under which it was made.

These positions are supported by authoritative cases in other States, and our own decisions are in approval of the same general principle. *Illinois Steel Co. v. Paczocha,* 139 Wis., 23; *Clithers v. Fenner,* 122 Wis., 356; *Montague v. Marunda,* 71 Neb., 805; *Rowland v. Williams,* 23 Ore., 516; *Vance v. Wood,* 22 Ore., 77; *Iron and Coal Co. v. Bayles,* 95 Tenn., 612; *McNeely v. Langhan,* 22 Ohio St., 32; *Weber v. Anderson,* 73 Ill., 439; *Shevin v. Brackett,* 36 Minn., 152; *Smith v. Chapin,*

31 Conn., 530; *Ricker v. Butler,* 45 Minn., 545; Braswell on Limitations and Adverse Possession, sec. 240; Burdick on Real Property, pp. 642-643; *Barrett v. Brewer,* 153 N. C., pp. 547-551; *Bond v. Beverly,* 152 N. C., 57; *Atwell v. Shook,* 133 N. C., 387; *Everett v. Newton,* 118 N. C., 919; *London v. Bear,* 84 N. C., 266.

In *Illinois Steel Co. v. Paczocha, supra,* it was held, among other things: "The privity between successive occupants of land which will permit the tacking of their possessions is not dependent upon any claim, or attempted transfer, of any other interest or title in the land, but is privity merely of physical possession not derived from or in subordination to the true owner; and the only essential of the transfer is that the predecessor passes it to the successor by mutual consent, as distinguished from a case where a possessor abandons possession generally and another, finding the premises unoccupied, enters without contact or relation with the former.

"2. Where the possessions of successive occupants other than the true owner join by delivery from predecessor to successor, there is no opportunity for the true owner to become seized, and after twenty years submission to such inability he becomes barred. . . .

"7. There is privity of possession between one who lived upon land with his family and the members of the family who continued to occupy it as a home after his death."

In *Montague v. Marunda:* "Privity must be shown between adverse claimants of real estate before the possession of one can be tacked to the possession of the other for the purpose of completing title by prescription, but this privity may exist by grant, devise, purchase, or descent, and the adverse possession of an ancestor may be taken advantage of by his heirs if their possession has been continuous with his, exclusive and under the same claim of right as made by him. In such case the ouster and disseizin made by the ancestor is continued by the heirs and relates back to the original entry."

In *McNeely v. Langan,* 22 Ohio: "The possession necessary to bar an action, for the recovery of real property, need not be continuous for the period of limitation in any one occupier. It is sufficient that the possession during such period was in the defendant and those under whom he claims; and, as to third persons against whom the possession was held adversely, it is immaterial if successive transfers of the possession were in fact made, whether such transfers were by will, by deed, or by agreement, either written or verbal."

And in *Rowland v. Williams,* 23 Oregon: "Continuity is an indispensable element of adverse possession, but several possessions may be tacked together where they can be referred to the original entry. No

paper evidence of a transfer of possession is necessary when the holding is under the claim of the first entryman."

In *Bond v. Beverly:* "The subsequent holder under a deed void for uncertainty of description was allowed to tack his possession to that of his grantor and refer the same to the deed under which the latter held as color."

In *Barrett v. Brewer* the doctrine of tacking was disallowed, but that was on the ground that there had been no entry by the ancestor under the color, and, speaking to the question, *Associate Justice Brown* quotes with approval from *Shevin v. Brackett* as follows: "Therefore, it is held, in treating of color of title, that the privity spoken of exists between two successive holders when the latter takes under the earlier as by descent (as, for instance, a widow under her husband or a child under its parent) or by will or grant, as by voluntary transfer of possession."

In *Atwell v. Shook, supra,* the occupation of the widow was held to inure to the benefit of the heirs at law on a question of adverse possession. And in *London v. Bear* the possession of the executor was held to be in subordination to the heir's title.

Considering the record in the light of these authorities, we are of opinion that there was error to defendant's prejudice in holding that they could not avail themselves of Z. T. Ledbetter's occupation of the property as being under color if he entered and held the same as his father's executor. While we are disposed to concur in his Honor's view that the will in question did not convey the estate to the executor, but only a power of sale, *Ferebee v. Proctor,* 19 N. C., 439, and while there are cases to the effect that there is no privity between the heirs of a deceased owner and his personal representatives in reference to real estate, these authorities will be found to refer more generally to a privity of estate or title, and have no application to the facts of this record, tending, as they do, to show that Richard Ledbetter, having bought and taken a deed for this property and entered thereon during his lifetime, directing his son, who then, to some extent, managed business of this kind for him, "to hold possession under the Lance deed"; that he died, leaving a will which empowered his son to sell the property and vesting in him such estate as was necessary to carry out the powers under the will; that the son entered, claiming ownership under the will, and, in the assertion of his father's title, exercising possession continuously from his death in 1903 to his sale to defendant in 1914, and that said executor was also one of the testator's heirs at law. True, there is much testimony on the part of plaintiff tending to show that there was no continuity of possession on the part of the adverse claimants, and that neither the occupation of the father and

son nor of both together was of a character and extent sufficient to mature title; but there is very little conflict of evidence as to *how* the executor claimed while he was in possession, to wit, that he was there under the will, asserting ownership for the benefit of his father's estate; and if these facts are accepted by the jury and were continued and of a kind sufficient to mature his title, there would be such a privity of claim and possession between himself and his father as would justify referring his occupation to the original entry and give him the benefit of his father's deed as color of title. In *Ricker v. Butler,* 45 Minn., 545, and *Rowland v. Williams,* 23 Ore., *supra,* the possession of the personal representative, asserting ownership for the estate, was held to inure to the benefit of the heir within the principle referred to, and our own case of *London v. Bear* is in recognition of the same principle.

For the error indicated defendant is entitled to a new trial of the issue, and it is so ordered.

New trial.