IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-921

Filed 20 August 2025

Henderson County, No. 22CVS000486-440

DENISE GONZALEZ and EVAN DREW, Plaintiffs,

v.

SEAN MARFIONE and KELLY MARFIONE, Defendants.

Appeal by plaintiffs from orders entered 18 July 2023 by Judge Marvin Pope, and 11 October 2023 by Judge Steve Warren, in Henderson County Superior Court. Heard in the Court of Appeals 22 May 2025.

*Roberts & Stevens, PA, by David Hawisher, for plaintiffs-appellants.*

*Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones, for defendants-appellees.*

FLOOD, Judge.

Plaintiffs Denise Gonzalez and Evan Drew appeal from the trial court's orders denying Plaintiffs' motion for partial summary judgment, and granting Defendants Sean and Kelly Marfione's motion for summary judgment, on Plaintiffs' claim for adverse possession. On appeal, Plaintiffs argue the trial court erred because "privity of possession" supports tacking Plaintiffs' possession of a disputed forty-one-foot tract of land to the prior owner's possession of that tract for purposes of adverse possession. Upon review, we conclude Plaintiffs have failed to demonstrate they met the required

twenty-year statutory period to support their claim for adverse possession. We therefore affirm the trial court's orders.

## I. **Factual and Procedural Background**

Plaintiffs and Defendants own adjacent properties, 388 Jubilation Drive and 300 Jubilation Drive, respectively, in Hendersonville, North Carolina. On 25 April 2001, Kenneth and Annie Walden (the "Waldens"), who at that time owned both properties, conveyed 388 Jubilation Drive via deed to Randall and Ann Marie Buhrmaster (the "Buhrmasters").[1] In "late 2001[,]" the Buhrmasters began using a forty-one-foot tract of land (the "Disputed Tract"), adjacent to their property and located at 300 Jubilation Drive, which they believed they had purchased from the Waldens for "about a thousand dollars[,]" but "nobody could find a record" of the transaction. The Buhrmasters cleared the Disputed Tract, "put up a trampoline[,]" "installed a fence[,]" and added a garden and "firepit area" within the Disputed Tract.

The Buhrmasters continued to use the Disputed Tract without objection from their neighbors until, on 11 April 2016, Ann Marie Buhrmaster (hereinafter "Buhrmaster")—who by then had widowed and moved to Florida—conveyed 388 Jubilation Drive to Gonzalez. On 21 February 2018, Gonzalez executed a new deed adding Drew to the deed as joint tenants with rights of survivorship (the 2016 and

---

[1] While not salient to the tacking issue on appeal, as background, on 15 April 2002, the Waldens conveyed 300 Jubilation Drive to Larry Walden; on 7 June 2005, Larry and Melissa Walden conveyed the property to David and Jane Johnson; and on 25 April 2019, David and Jane Johnson conveyed the property to Defendants.

2018 deeds are hereinafter collectively referred to as "Plaintiffs' Deed"). Plaintiffs' Deed did not include or refer to the Disputed Tract; rather, Plaintiffs' Deed "mirror[ed] word-for-word the deed [the] Buhrmaster[s] received" from the Waldens in 2001, which likewise did not include or refer to the Disputed Tract. At the time Buhrmaster conveyed the deed to Plaintiffs, there was no "document . . . that would reflect the land transfer" of the Disputed Tract, and Plaintiffs and Buhrmaster did not discuss the Disputed Tract. Plaintiffs continued to maintain and use the Disputed Tract largely as the Buhrmasters had.

On 30 March 2022, Plaintiffs commenced the underlying action, seeking, among other claims, adverse possession of the Disputed Tract. Plaintiffs alleged, in relevant part, adverse possession following a "continuous and uninterrupted . . . period [of use of the Disputed Tract] in excess of [twenty] years collectively" between Plaintiffs and Buhrmaster. On 28 April 2023 and 10 July 2023, Plaintiffs and Defendants, respectively, filed motions for summary judgment as to Plaintiffs' adverse possession claim. Plaintiffs argued privity existed between themselves and Buhrmaster sufficient to support tacking, and provided as supporting evidence Buhrmaster's affidavit, submitted 22 November 2022, expressing her "desire to convey to [Plaintiffs] all my rights and use associated with my adverse possession of" the Disputed Tract. Defendants argued Plaintiffs failed to demonstrate the statutory period of possession required for a claim of adverse possession, specifically arguing

Plaintiffs lacked the privity necessary to "tack" subsequent adverse possession periods onto one another.

On 29 June and 9 October 2023, the trial court held hearings on Plaintiffs' and Defendants' motions, respectively. In an order entered 18 July 2023, the trial court denied Plaintiffs' motion for partial summary judgment as to adverse possession; in an order entered 11 October 2023, the trial court granted Defendants' motion for summary judgment.[2] On 5 December 2023, Plaintiffs filed a "voluntary dismissal without prejudice" as to their remaining pending claims. Plaintiffs timely appealed.

## II. Jurisdiction

This Court has jurisdiction to hear this appeal from the final judgment of a superior court, pursuant to N.C.G.S. § 7A-27(b) (2023). Here, because Plaintiffs filed a "voluntary dismissal without prejudice" as to their remaining pending claims, "[a]ll claims and judgments are final with respect to all the parties, and there is nothing left for the trial court to determine." *See Tarrant v. Freeway Foods of Greensboro, Inc.*, 163 N.C. App. 504, 508 (2004).

## III. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of

---

[2] The trial court granted Plaintiffs' partial motion for summary judgment as to a claim of easement by prescription; this portion of the order is not at issue on appeal.

law." *In re Will of Jones*, 362 N.C. 569, 573 (2008) (citation and internal quotation marks omitted).

> A genuine issue is an issue that is supported by substantial evidence, and an issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action.
>
> The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial.

*James H.Q. Davis Tr. v. JHD Props., LLC*, 387 N.C. 19, 23 (2025) (citations omitted) (cleaned up). "Under a *de novo* review, this Court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *In re S.W.*, 914 S.E.2d 457, 461 (N.C. Ct. App. 2025) (citation omitted).

## IV. <u>Analysis</u>

On appeal, Plaintiffs argue that the trial court erred because "privity of possession" supports tacking Plaintiffs' possession of the Disputed Tract to Buhrmaster's possession of the Disputed Tract for purposes of adverse possession. We disagree.

### A. Adverse Possession, Privity, and Tacking

Under North Carolina law, real property may be claimed through adverse possession under color of title for a statutory period of seven years, or under claim of right without color of title for a period of twenty years. N.C.G.S. §§ 1-38(a), 1-40 (2023); *see also Newkirk v. Porter*, 237 N.C. 115, 119 (1953). "In either case, in order to bar the true owner of land from recovering it from an occupant in adverse possession, the possession relied on must have been actual, open, visible, notorious, continuous, and hostile to the true owner's title and to all persons for the full statutory period." *Newkirk*, 237 N.C. at 119; *see also Hinman v. Cornett*, 386 N.C. 62, 65 (2024) ("Adverse possession under claim of right without color of title requires actual, open, notorious, continuous, and hostile possession for a period of at least twenty years."). "[I]n order that title may be ripened thereby, such possession must be shown to have been continuous and uninterrupted for the full statutory period." *Newkirk*, 237 N.C. at 119. The reason for the continuity requirement is "that if the possession of the adverse claimant be broken, the constructive possession of the true owner intervenes and destroys the effectiveness of the prior possession." *Id.* at 119.

"[I]n order to fulfil the requirements as to continuity of possession," however, "it is not necessary that an adverse possession be maintained for the entire statutory period by one person. Continuity may be shown by the tacking of successive possessions of two or more persons between whom the requisite privity exists." *Id.* at 119; *see also Dickinson v. Pake*, 284 N.C. 576, 585 (1974) ("Tacking is the legal principle whereby successive adverse users in privity with prior adverse users can

tack successive adverse possessions of land so as to aggregate the prescriptive period of twenty years.").  North Carolina law permits tacking in numerous contexts; for example, tacking is permitted in the context of prescriptive easements, *see, e.g.*, *Rathburn v. Hawkins*, 56 N.C. App. 82, 85–86 (1982) (providing that the plaintiffs could "tack the possession of their predecessor in title . . . to their own use, as long as the offer[ed] proof at trial that the requirements to establish prescriptive use also existed in their predecessor"), and in the context of landlord-tenant relationships, *see, e.g.*, *Alexander v. Gibbon*, 118 N.C. 796, 801 (1896) (providing that a tenant's possession may be tacked to a landlord's possession for purposes of title by adverse possession).

Although "[t]here is no definition of the word 'privity' which can be applied in all cases[,]"

> [t]he ground of privity is property . . . and it relates to persons in their relation to property, [but] does not relate to any question, claim or right independent of property. [W]hether the privity be one of estate, contract, blood, or law, it has no personal basis as a mere matter of sentiment, but rests on some actual mutual or successive relationship to the same right of property.

*Masters v. Dunstan*, 256 N.C. 520, 524–25 (1962) (citation omitted).  In the context of adverse possession, the two types of privity often at issue are "privity of possession," defined as "[p]rivity between parties in successive possession of real property," and "privity of estate," defined as "[a] mutual or successive relationship to the same right in property, as between grantor and grantee or landlord and tenant."  *See Privity*,

Black's Law Dictionary (12th ed. 2024); *see generally* 2 C.J.S. *Adverse Possession* § 157 (2025) (providing that the two types of privity often at issue in the context of tacking are "privity of possession" and "privity of estate").

Our Supreme Court, in *Vanderbilt v. Chapman*, explained that, in general, "privity of possession" suffices to tack subsequent possessions:

> [I]n case of successive occupants, there must be some recognized connection between them. This connection may be effected by deed or will or other writing, or it may be shown by parol. It is said that there must be a privity between the successive occupants, but this does not at all mean that there must be a privity of title. . . . The privity referred to is only that of possession, and may be said to exist whenever one holds the property under or for another or in subordination to his claim and under an agreement or arrangement recognized as valid between themselves.

172 N.C. 809, 812 (1916); *see also Lancaster v. Maple St. Homeowners Ass'n,* 156 N.C. App. 429, 438 (2003) ("[T]he privity connection is made out [to permit tacking] if an adverse possessor transfers his possession to another by deed or will or even by parol transfer." (citation omitted)). The Court explained that once privity of possession has been established, a "claimant or subsequent holder" of real property may "avail himself to the adverse occupation of his predecessors[.]" *Vanderbilt*, 172 N.C. at 812; *see also* James A. Webster, Jr., *2 Webster's Real Estate Law In North Carolina* § 14.09 (Michael B. Kent, Jr., James B. McLaughlin, Jr. & Patrick K. Hetrick, eds., 6th ed. 2024) (hereinafter "Webster's") ("This 'privity' or relational connection of possessions

serves to blend successive possessions and makes them one continuous holding under one continuous claim although by two or more persons.").

Where parties seek to tack successive possessions for purposes of adverse possession, privity is established when the deed includes the disputed land: "[A] grantee claiming land within the boundaries called for in the deed or other instrument constituting color of title, may tack his grantor's possession of such land to that of his own for the purpose of establishing adverse possession for the requisite statutory period." *Newkirk*, 237 N.C. at 119–20 (citing *Vanderbilt*, 172 N.C. at 812). The Court's decision under *Vanderbilt*, however, is less clear on the issue of tacking where the deed does not include the disputed land in the deed's description. *See Webster's* § 14.09 ("A more difficult question involves the case where an owner possesses beyond the described boundaries of his property. . . . The tough question is whether a grantee of the true owner who takes possession beyond the true boundary can tack his grantor's possession to the property beyond the true boundary onto his own to perfect a claim of title to the land beyond the true boundary under the doctrine of adverse possession"). In a series of decisions subsequent to *Vanderbilt*, our appellate courts, when considering the issue of tacking beyond the described boundaries of the property, have specifically required privity of estate to tack subsequent possessions.

**B. Tacking Possessions of Property Not Contained in the Deed**

1. <u>North Carolina Supreme Court Precedent</u>

In *Ramsey v. Ramsey*, the plaintiff and the defendant owned adjacent tracts of land, both fenced in, except for "a small triangular tract outside" of their fences, on which a spring was located, but which was located on the "plaintiff's side of the dividing line" of their properties. 229 N.C. 270, 271 (1948). The defendant claimed ownership of the triangular section of land via "adverse possession for [twenty] years and also adverse possession under color." *Id.* at 271. On appeal to our Supreme Court, the Court dismissed the defendant's adverse possession claim for twenty years, concluding the defendant's possession of the triangular tract of land had "not continued for the requisite period and is therefore unavailing." *Id.* at 272–73. The Court then addressed whether the defendant could tack his possession of the triangular tract of land to that of the previous owner, and held that the defendant could not tack his possession:

> It is true there is evidence tending to show that his predecessor in title used the spring as he used it. But his deed did not convey or purport to convey the spring or the triangular tract upon which it is located. The description contained in [the] defendant's deed does not embrace it.

*Id.* at 273. The Court held that, because the deed did not describe, and therefore did not convey, the triangular tract of land, "*there is no privity* between [the defendant] and his predecessors in title as to this land which lies outside the boundary of the land conveyed by them." *Id.* at 273 (emphasis added). Because no privity existed between the defendant and his predecessors, the Court concluded the defendant was "not permitted to tack their possession, even if adverse within the meaning of the

law, to his possession so as to show adverse possession for the requisite statutory period." *Id.* at 273.

Our Supreme Court in *Newkirk* applied the same rule set out in *Ramsey*, providing: "[T]he rule with us is that a deed does not of itself create privity between the grantor and the grantee as to land not described in the deed but occupied by the grantor in connection therewith[.]" 237 N.C. at 120. The Court provided that "this is so even though the grantee enters into possession of the land not described and uses it in connection with that conveyed." *Id.* at 120. The Court explained that the failure of the deed to describe the disputed area, "[n]othing else appearing, . . . raises the inference that the grantee claimed it independently and began a holding which was adverse to the grantor as well as to other persons." *Id.* at 120.

Next, in *Burns v. Crump*, the defendants claimed adverse possession of a one-tenth acre tract of land that was contained in the plaintiff's deed, but not contained in the defendant's deed, arguing the defendants possessed the land "under color[,]" and their predecessors in title possessed the land in dispute "continuously for more than twenty years." 245 N.C. 360, 360–61 (1957). The Court dismissed the defendants' color of title argument, explaining: "A deed which is color of title is such only for the land designated and described therein. Hence, the law with respect to color of title is not applicable to lands not embraced in the description in such deed." *Id.* at 362–63 (internal citations omitted). Turning next to the issue of tacking, the Court clarified: "A grantee in a deed is not entitled to tack the adverse possession of

his predecessors in title as to a parcel of land not contained within the description in his deed, unless privity exists between the parties." *Id.* at 363. The Court, in describing the requisite privity, provided that "[s]everal successive possessions cannot be tacked for the purpose of showing a continuous adverse possession where there is no *privity of estate* or *connection of title* between the several occupants[.]" *Id.* at 364 (emphasis added) (citation omitted). The Court concluded that "[n]o privity exists, under our decisions, between the defendants and their predecessors in title as to the disputed area on the facts disclosed by the record on this appeal." *Id.* at 363–64.

Our decisions in *Ramsey*, *Newkirk*, and *Burns* express and clarify the rule that successive possessions of disputed land falling outside the description of a deed cannot be tacked, unless the party seeking adverse possession can establish "privity of estate or connection of title" so as to support tacking. *See Burns*, 245 N.C. at 364; *Newkirk*, 237 N.C. at 120; *Ramsey*, 229 N.C. at 272–73. Without this requisite privity, "*there is no privity* between [the party claiming adverse possession through tacking] and his predecessors in title as to [] land which lies outside the boundary of the land conveyed by them." *See Ramsey*, 229 N.C. at 273 (emphasis added).

### 2. Further Development of the Law Concerning Tacking

This Court in two recent decisions has applied the rule set forth above, acknowledging that North Carolina has adopted a minority position on this issue. In *Cole v. Bonaparte's Retreat Prop. Owners' Ass'n,* the plaintiffs filed a complaint for

adverse possession of a parcel of land, located adjacent to the property the plaintiffs had purchased, and owned by the property owners' association. 259 N.C. App. 27, 32–33 (2018). Both the prior owner and the plaintiffs believed the disputed parcel belonged to the principal property, although the deed conveyed by the prior owner to the plaintiffs "excluded from the property description" the disputed parcel. *Id.* at 31. On appeal to this Court, we explained: "Courts in most other states allow tacking when a grantor adversely possessing property beyond the bounds of a parcel he owns by deed conveys the parcel described by deed to a grantee who continues adversely possessing the same extraneous property." *Id.* at 34–35. We provided, however, that "the North Carolina Supreme Court has repeatedly departed from the majority rule." *Id.* at 35. We concluded that the plaintiffs "lack[ed] the necessary privity to tack their adverse possession of [the disputed property] to that of [the previous owner]" where it was undisputed that the deed conveyed from the prior owner to the plaintiffs failed to include the disputed parcel in the description. *Id.* at 36–37.

This Court, in *Lackey v. City of Burlington*, also acknowledged that "[w]hile it appears the general rule applied in other states is to permit such tacking of possession to establish adverse possession, North Carolina has adopted a minority position." 287 N.C. App. 151, 157 (2022). We provided that "[u]nder North Carolina law, a party may *only* tack their possession on to that of a prior owner where the prior owner *actually conveys* their interest in the allegedly adversely possessed property." *Id.* at 157 (emphases added). We further explained: "If ownership is passed through a deed

that does not include the allegedly adversely possessed property, the new owner may not tack the prior possession on to their own because, under North Carolina law, privity through a deed does not extend beyond the property described therein." *Id.* at 157 (citation and internal quotation marks omitted).

In light of our binding precedent,[3] we next proceed to discuss its application to the facts of the case *sub judice.*

### C. Privity Regarding the Disputed Tract

Here, Plaintiffs cannot tack their possession of the Disputed Tract to that of Buhrmaster's possession of the Disputed Tract because Plaintiffs' Deed contained no reference to the Disputed Tract, and as such, Plaintiffs have not established the requisite privity required under North Carolina law to support tacking. *See Burns*, 245 N.C. at 363–64; *Newkirk*, 237 N.C. at 120; *Ramsey*, 229 N.C. at 272–73; *Cole*, 259 N.C. App. at 35–37; *Lackey*, 287 N.C. App. at 157.

---

[3] Contemporary secondary sources further acknowledge that North Carolina has adopted this minority rule. *See Webster's* § 14.09 ("North Carolina has adopted a minority position on this issue, however, and allows tacking only where the grantor actually conveys his interest in the adversely possessed property."); *see also* 3 Am. Jur. 2d *Adverse Possession* § 74 (updated May 2025) ("Am. Jur. 2d") (citing to *Lackey* in explaining that "[s]ince privity through a deed does not extend beyond the property described therein, possession generally cannot be tacked to make out title by adverse possession where the deed by which the last occupant claims title does not include the land in dispute."). Am. Jur. 2d further provides that the "general rule is that a deed does not of itself create privity between the grantor and the grantee as to land not described in the deed but occupied by the grantor[,]" even if "the grantee enters into possession of the land not described and uses it in connection with the land that was conveyed." Am. Jr. 2d § 74 (citing *Burns*). Although Am. Jur. 2d explains the specific instances in which the "general rule" has been held to apply, it only cites to cases from jurisdictions other than North Carolina–precisely because North Carolina has adopted the minority rule. *See* Am. Jur. 2d § 74.

The facts in this case are similar to those in *Ramsey*, *Burns*, and *Cole*, where in each case, one party sought to tack possessions of land contained outside the description of the deed for purposes of adverse possession. *See Ramsey*, 229 N.C. at 271; *Burns*, 245 N.C. at 360; *Cole*, 259 N.C. App. at 32–33; *see also Lackey*, 287 N.C. App. at 157. Just as in those cases, where our appellate courts concluded that privity between the parties did not exist to support tacking because the deed did not include the description of the land in dispute, so here do we conclude Plaintiffs failed to establish the privity required to support tacking of Plaintiffs' possession to Buhrmaster's possession because Plaintiffs' Deed did not include a description of the Disputed Tract. *See Ramsey*, 229 N.C. at 272–73; *Burns*, 245 N.C. at 363–64; *Cole*, 259 N.C. App. at 35–37. Plaintiffs' Deed did not include or refer to the Disputed Tract; rather, the deed "mirror[ed] word-for-word the deed [the] Buhrmaster[s] received" from the Waldens in 2001, which likewise did not include or refer to the Disputed Tract. Further, at the time Buhrmaster conveyed the deed to Plaintiffs, there was no "document . . . that would reflect the land transfer" of the Disputed Tract, and Plaintiffs and Buhrmaster did not discuss the Disputed Tract. Finally, Buhrmaster's affidavit expressing her "desire to convey to [Plaintiffs] all my rights and use associated with my adverse possession of" the Disputed Tract is immaterial to the issue of privity in this case, because Plaintiffs' ownership was "passed through

a deed" that did not include the Disputed Tract, meaning Plaintiffs could "not tack the prior possession on to their own[.]"[4]  *See Lackey,* 287 N.C. App. at 157.

As our Supreme Court in *Burns* explained, and as this Court reinforced in *Lackey*, "privity of estate or connection of title" is required to support tacking for purposes of adverse possession, and because Plaintiffs failed to demonstrate that Buhrmaster "actually convey[ed her] interest in" the Disputed Tract, Plaintiffs may not tack their possession of the Disputed Tract to that of Buhrmaster's possession. *See Burns*, 245 N.C. at 364; *Lackey*, 287 N.C. App. at 157.  Accordingly, there is no genuine issue of material fact as to possession of the Disputed Tract, and Defendants are entitled to judgment as a matter of law.  *See In re Will of Jones*, 362 N.C. at 573.

As stated, North Carolina's rule is a minority position; it is, however, "elementary that we are bound by the rulings of our Supreme Court," *see Cole*, 259 N.C. App. at 36 (citation omitted), and "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court[,]"

---

[4] Buhrmaster's affidavit, having been made more than six years following her transfer of 388 Jubilation Drive to Plaintiffs, further demonstrates Plaintiffs' ownership of the Disputed Tract was not "effected by deed or will or other writing, or . . . shown by parol[,]" where the affidavit does not demonstrate an agreement or discussion between Buhrmaster and Plaintiffs, or an oral statement by Buhrmaster. *See Vanderbilt,* 172 N.C. at 812; *see generally Parol Evidence Rule*, Black's Law Dictionary (12th ed. 2024) (providing that an "agreement cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing"); *Parol*, Black's Law Dictionary (12th ed. 2024) ("An oral statement or declaration.").

*see In re M.A.C.*, 291 N.C. App. 35, 39 (2023) (citation omitted). We are bound by precedent and therefore affirm the trial court's orders.

## V. **Conclusion**

Upon review, we conclude Plaintiffs have failed to demonstrate they met the required twenty-year statutory period to support their claim for adverse possession of the Disputed Tract. We therefore affirm the trial court's orders.

AFFIRMED.

Judge STADING concurs.

Judge MURRY dissents in separate opinion.

MURRY, Judge, dissenting.

Plaintiffs appeal the trial court's summary judgment for their Defendant neighbors regarding a disputed 41-foot strip of land that Plaintiffs claim to adversely possess under North Carolina's statutory and common law. *See* N.C.G.S. § 1-40 (2023). Because I read our Supreme Court's precedent as both an express and implied recognition of tacking through privity of possession, I respectfully dissent.

This Court's sparse precedent on this specific issue leads me towards a different conclusion of applicable law than that reached by my colleagues in the majority. As I understand our Supreme Court's precedent, the summary-judgment movants—here, Plaintiffs—"carry the burden of establishing" their "entitle[ment] to judgment as a matter of law." *Bernick v. Jurden*, 306 N.C. 435, 440 (1982) (quoting N.C. R. Civ. P. 56(c)). I believe that Plaintiffs meet the common-law element of continuity required for adverse possession under N.C.G.S § 1-40 by making out a *prima facie* claim for privity of possession with Ms. Buhrmaster necessary to tack their occupancy onto hers. N.C.G.S. § 1-40. Thus, I would hold that the trial court erred in granting summary judgment for Defendants.

## I. Privities Distinguished

Our State has long recognized the statutory and common-law right to adversely possess another's property after an extended period of uninterrupted

occupation.[5] *See, e.g.*, Act of Jan. 19, 1792, ch. XV, 1791 N.C. Sess. Laws 11 (barring title claims by State against "continu[ous] possession of any lands . . . under . . . colourable title[ ] for . . . twenty-one years"); *Gilchrist v. McLaughlin*, 7 Ired. 310, 314–15 (1847) (establishing at least "actual, open, and exclusive" adverse-possession elements at common law). Today, a more modern claimant may adversely possess disputed land after 7 years if she occupies it "under color of title," N.C.G.S. § 1-38(a), and after 20 years if she does so per se, *id.* § 1-40. Ordinarily, the adverse possessor must occupy the land "continuous[ly]" over the specified period—*i.e.*, an "uninterrupted" stretch of time. *Dickinson v. Pake*, 284 N.C. 576, 581 (1974). But a more recent adverse possessor may "tack" her occupational period onto a preexisting possession if she can show "privity with [the] prior adverse user[ ]" and thus "aggregate the prescriptive period." *Id.* at 585 (citing 1 James A. Webster, Jr., *Real Estate Law in North Carolina* § 289 (1st ed. 1971) [hereinafter *Webster*]). Faced with scant caselaw and unclear dicta on this point, our Supreme Court should take this opportunity to clarify what sort of non-title privity may enable this periodic tacking.[6]

---

[5] Indeed, North Carolina was the first state of the then-nascent Union to do so in 1715. *See* Act of Jan. 19, 1716, ch. XXVII, 1715 N.C. Sess. Laws 32 [hereinafter Old Titles of Land Act]; Charles C. Callahan, *Adverse Possession* 50–51 (1961) (describing contemporaneous legal reaction to nation's first adverse-possession statute).

[6] Because the issue of tacking requires highly specific fact patterns and highly motivated litigants to even present an addressable question of law, the lack of more recent North Carolina cases on this point is not surprising. *Accord Cole v. Bonaparte's Retreat Prop. Owners' Ass'n*, 259 N.C. App. 27, 36 n.2 (2018) (first citing *Ramsey v. Ramsey*, 229 N.C. 270 (1948); then citing *Newkirk v. Porter*, 237 N.C. 115 (1953); and then citing *Burns v. Crump*, 245 N.C. 360 (1957)) (acknowledging "paucity of more contemporary decisions from either . . . [c]ourt applying the tacking[-]privity rule.")).

"Privity" lacks a precise "definition . . . appli[cable] in all cases," *Masters v. Dunstan*, 256 N.C. 520, 524 (1962), but means at least a "connection or relationship between two parties" that have a "legally recognized interest in the same subject matter," *Privity*, *Black's Law Dictionary* (12th ed. 2024) [hereinafter *Black's Law*]. In the context of adverse possession, this "successive relationship[ ] to the same rights of property" falls into one of two overarching categories: (1) "privity of estate" or (2) "privity of possession." 2 C.J.S. *Adverse Possession* § 157, Westlaw (database updated July 2025); *Barrett v. Brewer*, 153 N.C. 547, 549 (1910) ("To constitute *color* of title there must be a paper title to give color to the adverse possession, whereas a *claim* of title may be constituted wholly by parol." (emphases added)). These two privities distinguish between the *legal right to* and the *actual possession of* certain property. *Privity*, *Black's Law*. This distinction is crucial to Plaintiffs' claim.

## A. Privity of Estate Distinguished

The more commonly analyzed privity of estate (*i.e.*, privity of title) enables tacking where the claimant asserts continuity under color of title. *Price v. Tomrich Corp.*, 275 N.C. 385, 392 (1969); *see Privity*, *Black's Law* (synonymizing "privity of estate" with "privity of title" (italicization omitted)). As N.C.G.S. § 1-38 recognizes, a privity-of-estate assertion "shortens the relevant time period for adverse[-]possession claims from [twenty] to seven years." 1 N.C. Index 4th *Adverse Possession* § 16, Westlaw (database updated July 2025). An adverse possessor may present a "valid deed" for her claimed property that "serve[s] as color of title." *Hensley v. Ramsey*, 283

N.C. 714, 733 (1973) (citing *Price*, 275 N.C. at 392). This faster route to adverse possession than with privity of possession implies somewhat stricter requirements as a corollary, which our Supreme Court best explicated in *Ramsey v. Ramsey*, 229 N.C. 270 (1948), and *Burns v. Crump*, 245 N.C. 360 (1957).[7]

In *Ramsey*, the plaintiff sued an unrelated defendant neighbor to title of a "small triangular tract" containing a natural-water spring that they both used. *Ramsey*, 229 N.C. at 271. The tract fell inside the plaintiff's property as described in the metes and bounds of his deed, but outside those of the defendant's deed. *See id.* at 271–72. At trial and on appeal, the defendant claimed both "adverse possession for 20 years and . . . under color" of title. *Id.* at 271. He claimed to "use[ ] th[at] spring for general purposes . . . and . . . kept . . . [it] in usable condition for more than 50 years" prior to suit. *Id.* After discarding the privity-of-possession claim on non-exclusivity grounds, *see id.* at 272, the Court dismissed the defendant's privity-of-title claim because "his deed did not . . . purport to convey the spring or the triangular tract upon which it is located." *Id.* at 273. It reasoned that—like Plaintiffs here—the

---

[7] For the (unsuccessful) sake of brevity, I forgo in-depth discussion of *Newkirk* but briefly note its alignment with both *Ramsey* and *Burns* (collectively, "*NRB*") in this context. The majority's *Newkirk* synopsis confirms "that a deed does not *of itself* create privity between the grantor and the grantee." (Emphasis added; quoting *Newkirk*, 237 N.C. at 120.) But I respectfully disagree with the majority's over-preclusive conclusion drawn from this principle and instead read *Newkirk* as simply recognizing that at least a privity-*of-estate* claimant "may tack his grantor's possession . . . to that of his own . . . [to] establish[ ] adverse possession." *Newkirk*, 237 N.C. at 119–20 (citing *Vanderbilt v. Chapman*, 172 N.C. 809, 812 (1916)).

defendant lacked estate "privity between him and his predecessors in title as to [ ]his land" because the disputed property "lie[d] outside the boundary . . . conveyed." *Id.*

*Burns* reaffirmed *Ramsey*'s acknowledgement that a grantee cannot "tack the adverse possession of his predecessors in title as to a parcel" not "descri[bed] in his deed[ ] *unless* privity exists between the[m]."[8] *Burns*, 245 N.C. at 363 (emphasis added) (citing *Ramsey*, 229 N.C. at 273). For the same purpose as in *Ramsey*, the *Burns* defendants adduced at trial a deed to a "45-acre tract of land [that] d[id] not cover the disputed area" between them and the plaintiff. *Id.* at 362. In response, the *Burns* Court characterized *Ramsey* as "in accord with the views expressed in 1 Am. Jur. 1st pp. 880–82," a contemporaneous common-law treatise recognizing that:

> A continuous adverse possession for the full statutory period may be accomplished by a parol understanding, under which the premises are delivered by a written conveyance. *It is not material that, in the sale, the land claimed by adverse possession is not described in that conveyance.*
>
> A deed does not *of itself* create privity as to land not described in the deed. This rule is limited to *only* where the deed itself is relied on *solely* to create privity, and there is *no* circumstance showing an intent to transfer any property beyond the calls of the deed.

1 Am. Jur. 1st *Adverse Possession* §§ 155–56 (1936) [hereinafter Am. Jur. 1st] (citation modified; emphases added). Much like its *Ramsey* predecessor, the *Burns*

---

[8] *Ramsey* is the first of several 1950s tacking cases in which our Supreme Court acknowledged and reaffirmed *Vanderbilt*'s title–possession distinction. *See* 1 Am. Jur. 1st *Adverse Possession* § 155 (1936); *accord, e.g.*, *Locklear v. Oxendine*, 233 N.C. 710, 715 (1951) (distinguishing "color of title . . . [a]s *one* of the methods by which title may be shown" (emphasis added)); *Newkirk*, 237 N.C. at 121 (citing 1 Am. Jur. 1st §§ 153, 156); *Burns*, 245 N.C. at 364 (characterizing at least *Ramsey*, *Locklear*, and *Newkirk* as "in accord with the view expressed in 1 Am. Jur. 1st §§ 151–56").

Court reaffirmed these principles by rejecting the defendants' adverse-possession claim because a deed offered as "color of title is such only for the land designated and described therein." *Burns*, 245 N.C. at 362.

Read through the prism of *Vanderbilt v. Chapman*, 172 N.C. 809 (1916) (discussed below), *Burns* and *Ramsey* articulate the blackletter rule that an adverse-possession claimant must offer an instrument documenting her right to certain realty if, *but only if*, she bases her tacking claim on privity of estate. But neither case precludes the possibility of a claim based on privity of possession. Because it rests upon a deed's actual language, privity of estate remains the most recognizably enforceable (and practically sound) means of tacking possessory periods onto one another in North Carolina. *E.g.*, *Walls v. Grohman*, 315 N.C. 239, 249 (1985) (relying on deed language to permit adverse possession "founded on a mistake"). But it is not the only means.

### B. Privity of Possession Recognized

Our state's common law has always recognized privity of possession in principle, even if our modern courts have dodged the core question in practice. *Contrast Ramsey*, 229 N.C. at 273 (reaffirming *Vanderbilt*, 172 N.C. at 812), *with, e.g.*, *Lancaster v. Maple St. HOA*, 156 N.C. App. 429, 439 (distinguishing plaintiffs' cited caselaw from "tacking issues . . . between joint tenants . . . against each other"), *aff'd per curiam mem.*, 357 N.C. 571 (2003). Two distinct adverse possessors in North Carolina need only "agree upon the succession of one to the other" "[t]o warrant

tacking in the case of voluntary transfer," Restatement (First) of Property § 464 cmt. b (A.L.I. 1944)—*i.e.*, "by parol transfer," *Lancaster*, 156 N.C. App. at 438 (quoting 1 *Webster* § 14-09 (5th ed. 1999)). A grantor need not record within the deed's four corners her intent to convey adversely possessed property; the grantee may instead rely on "word-of-mouth . . . evidence . . . not memorialized in the contract itself." Bryan A. Garner, *Garner's Modern English Usage* 804 (5th ed. 2022) [hereinafter Garner, *Modern English*] (defining "parol").

When assessing a parol transfer's possible intent, our courts "may consider all the surrounding circumstances" of the deed's execution to "ascertain[ ] and give[ ] effect" to "the intention of the parties." 9 N.C. Index 4th *Deeds* § 34. Because a "deed . . . is an executed contract," *Vettori v. Fay*, 262 N.C. 481, 483 (1964) (per curiam), we construe it by "ascertain[ing] the parties' intentions in light of all the relevant circumstances." 6 N.C. Index 4th *Contracts* § 76. Relevant circumstances here include "the situation of the parties[ ] and objects to be accomplished," as well as the "manner in which the[y] . . . carried out the [agreement's] terms . . . since its execution." *Id.* Thus, I believe that the parties' objective conduct before and after the 2016 conveyance of the 388 parcel to Ms. Gonzalez directly informs Plaintiffs' privity-of-possession assertion.

### 1. *Cole v. Bonaparte's Retreat*

Both the majority and Defendants here understandably overextend *Cole v. Bonaparte's Retreat Prop. Owners' Ass'n*, 259 N.C. App. 27 (2018), to deny "that

privity merely by parol transfer [i]s acceptable" in North Carolina. Because *Cole* "conflicts with several decisions of the Supreme Court," *State v. Wilkerson*, 232 N.C. App. 482, 487 (2014), and misreads those "binding precedent[s]," *State v. Davis*, 198 N.C. App. 443, 449 (2009), I do not believe that *In re Civil Penalty*'s precedential command applies to *Cole*.[9] *See In re Civil Penalty*, 324 N.C. 373, 384 (1989); Bryan A. Garner et al., *The Law of Judicial Precedent* 306 (2016) (acknowledging permissible "reexamin[ation of] normal[ ] . . . precedent when the reasoning or theory of . . . prior [panel] authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." (quotation omitted)).

In *Cole*, this Court partially affirmed a summary judgment for the defendant HOA that challenged the plaintiffs' adverse-possession claim. *Id.* at 44. In 2000, the plaintiffs purchased one "Lot 18" under the defendant's HOA jurisdiction from a prior grantor, who himself had purchased the lot from the original developer in 1981. *Id.* at 31. Both the prior grantor and the plaintiffs "mistakenly believed Lot 18 was a waterfront lot" because of the latter's improvements to an intervening "Parcel A" over the years. *Id.* The plaintiffs sued, arguing that both they and the original grantor

---

[9] Albeit in the opposite direction, the *Cole* Court itself acknowledges the rationale I outline here. The *NRB* cases do "reflect that[,] in North Carolina, privity *through a deed* does not extend beyond the property [it] describe[s]." *Cole*, 259 N.C. App. at 36 (emphasis added). And *In re Civil Penalty*, 324 N.C. 373 (1989), certainly "compel[s us] to apply [*NRB*'s] rule" here. *Id.* I merely believe that *Vanderbilt* renders that "rule" inapposite.

intended Lot 18 as waterfront property even though Lot 18's deed excluded the disputed Parcel A from its property description. *Id.* at 31.

Because the plaintiffs' "deed . . . did not convey any possessory interest in Parcel A" on its face, the *Cole* Court reasoned that they could "not rely on it *alone* to establish privity for tacking their adverse possession of Parcel A to" the original grantor's own. *Id.* at 37 (emphasis added). Neither do Plaintiffs here assert only "privity through a deed." *Id.* at 36. They expressly disclaim that in favor of privity created by " 'physical possession . . . passe[d]' from one person to another 'by mutual consent.' " (Quoting *Vanderbilt*, 172 N.C. at 812–13.) Because the *Cole* Court precluded privity to property "beyond the bounds of a parcel" as recognized "in most other states," I would hold that it omitted *Vanderbilt* and thus misread its progeny in asserting that "the North Carolina Supreme Court has repeatedly departed from the majority rule" of parol-evidenced tacking. *Cole*, 259 N.C. App. at 35–36; *see, e.g.*, *State v. Davis*, 198 N.C. App. at 449 (declining to follow inapposite prior Court panel holding for "fail[ing] to follow binding precedent" already set by Supreme Court).

### 2. *Vanderbilt v. Chapman*

*Vanderbilt v. Chapman* articulates North Carolina's common-law distinction between privities of estate and possession. In *Vanderbilt*, our Supreme Court reversed a jury verdict that the plaintiff owned an entire 465-acre tract in Buncombe County (Vanderbilt tract) because of the defendants' failure to adversely possess 169 acres of it. *Vanderbilt*, 172 N.C. at 809. Both the Vanderbilt tract and the defendants'

adjacent tract (Chapman tract) derived from a single State land grant in 1796 that the original grantee then subdivided. *See id.* at 809–10. Through an unbroken series of conveyances, the plaintiff held proper paper title to the Vanderbilt tract since that initial grant. *Id.* The Chapman tract's prior owner conveyed his portion to the defendants in 1914 to settle the estate of his father, who had passed away roughly 11 years prior. *Id.* at 811. The plaintiff sued to quiet title in response, alleging that the defendants lacked the color of title necessary "to show . . . continuity of possession" with the 11-year "occupation of the . . . son." *Id.* at 814–15.

Reversing and remanding the jury verdict for a new trial, the *Vanderbilt* Court held that the defendants' occupational tacking to their predecessor "d[id] not at all . . . [require] a privity of title" between them. *Id.* at 812. It distinguished the defendants' "ownership asserted [a]s one dependent on adverse *physical* possession," where "[t]he privity referred to [wa]s *only* that of possession." *Id.* (emphases added). Much like Plaintiffs here, the *Vanderbilt* defendants argued on appeal for privity of possession that they established by "hold[ing] the[ir] property under or for another . . . and under an . . . arrangement recognized as valid between themselves." *Id.*

Reading it in the context of *Vanderbilt*, *Ramsey*, and *Burns*, I believe that *Cole* unduly confined North Carolina's privity claims to a particular deed's text and thus contradicts *Burns*'s express adoption of 1 Am. Jur. 1st described above. To hold otherwise abrogates extant caselaw, which acknowledges that "privity between the successive occupants . . . *does not at all* mean that there must be a privity *of title*."

*Vanderbilt*, 172 N.C. at 812 (emphases added) (collecting 16 analogous privity-of-possession cases across 10 different state courts of last resort).[10] The North Carolina Supreme Court decisions bind this lower court's consideration of Plaintiffs' claim here regardless of their filing dates. *See Dechkovskaia v. Dechkovskaia*, 232 N.C. App. 350, 366 (2014) ("[W]e cannot overrule our Supreme Court's opinions . . . simply because the rule they recite is old . . . .").

### 3. *Cumulus Broadcasting v. Shim*

Turning forward to Plaintiffs' claim, I find the relatively modern Tennessee case of *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366 (Tenn. 2007), particularly instructive.[11] In *Cumulus*, the plaintiff broadcaster sought to quiet title to an adversely possessed highway-access road lying along a disputed property boundary with its defendant neighbor. *Id.* at 372. The plaintiff acquired the northern parcel in 1982 from its predecessor-in-interest following a series of prior conveyances. *Id.* at 370–71. The defendant similarly acquired the adjacent southern parcel in 1994. *Id.*

---

[10] *Vanderbilt* reaffirms the same adverse-possession principles discussed in its predecessor cases. *See, e.g.*, *Atwell v. Shook*, 133 N. C. 387, 394 (1903) ("For . . . 'tacking[,]' . . . there must be some privity, either of estate or possession, between the successive occupants."); *Bond v. Beverly*, 152 N.C. 56, 63 (1910) ("The attempted conveyances . . . , though we may treat the[ ] [deeds] as void, clearly establish the privity . . . ."); *Barrett v. Brewer*, 153 N.C. 547, 552 (1910) ("To show privity of possession, the later occupant . . . *must obtain his possession* either by purchase or descent . . . .").

[11] Given that "[t]he legislature of North Carolina . . . passed" the Old Titles of Land Act essentially construed here by the Tennessee Supreme Court "while Tennessee was" still geographically "a part of [our] state," I pause to note that Court's atypical persuasiveness regarding the principles of adverse possession. *Patton's Lessee v. Easton*, 1 Wheat 476, 479–81 (1816) (drawing upon 1715 act's North Carolinian caselaw to interpret analogous Tennessee statute), *abrogated by Gray v. Darby's Lessee*, Mart. & Yer. 396 (Tenn. 1825), *as recognized in Green v. Neal's Lessee*, 6 Pet. 291, 295 (1832).

at 370. After discovering in 2000 "a portion of the access road . . . on [his] property," the defendant built a fence across the road that blocked the plaintiff's vehicle access to its northern parcel. *Id.* at 371–72 (first alteration in original). The plaintiff initiated its lawsuit the next year in 2001. *Id.* at 372. After a chancery court granted the plaintiff summary judgment on its adverse-possession claim, the defendant appealed to the Tennessee Supreme Court. *Id.* 372–73.

On appeal, the defendant argued in relevant part that the plaintiff could not establish continuous adverse possession for the required 20-year period under Tennessee's common law. *Id.* at 373; *cf.* N.C.G.S. § 1-40 ("20 years"). In discussing the continuity element of adverse possession, the *Cumulus* Court acknowledged that title vests "[w]hen an adverse possessor holds the land for a period of twenty years, even absent any assurance or color of title." *Cumulus*, 226 S.W.3d at 377. This 20-year period may occur through "[s]uccessive possessions, or tacking, . . . if there is no hiatus" between the multiple occupations. *Id.* In rejecting the defendant's argument, the Court reasoned that tacking requires only that "the adverse possessor intended to and actually did turn over possession of . . . [the] land." *Id.* (alterations in original) (quoting 10 *Thompson on Real Property* § 87.14 (2d ed. 1994)). This modern affirmation of Tennessee's common-law tacking principle aligns with its parent state's historical recognition of the same. Thus, we should acknowledge that Plaintiffs may similarly pursue their privity-of-possession claim as a matter of North Carolina law.

### C. Facts at Hand

#### *1. 2001–2016*

The parties here acknowledge Ms. Buhrmaster's lawful ownership of the 388 parcel and her adverse possession of the disputed strip, both commencing in 2001. The 388 parcel's deed did not reference this lappage, thus making its possession by the Buhrmasters adverse from the start. Over the next 15 years, the Buhrmasters held out the strip as their own through activities such as "clear[ing] and landscap[ing]" it. *Cole*, 259 N.C. App. at 30. Neither of Plaintiffs' predecessors-in-interest, the Waldens nor the Johnsons, questioned the active occupation of the strip overlaying the 300 parcel up through Ms. Buhrmaster's 2016 conveyance to Defendants. Plaintiffs' predecessors-in-interest, the Johnsons, also parol evidenced Ms. Buhrmaster's adverse possession "before . . . the [deed] was signed," Garner, *Modern English* 804, when they acknowledged the Buhrmasters' doctrinal "right to exclude," *see* 24 N.C. Index 4th *Property* § 1, by planting a tree line along Plaintiffs' soon-to-be side of the strip. Thus, I would hold that Ms. Buhrmaster adversely possessed the strip for at least the 15 years between 25 April 2001 and 11 April 2016 as a matter of law.

#### *2. 2016–2022*

As noted above, I believe that Plaintiffs have adduced evidence sufficient to raise a "genuine issue . . . [of] material fact" as to whether they can meet the 20-year adverse-possession period by tacking their 6-year occupancy between 2016 and 30

March 2022, their date of suit. N.C. R. Civ. P. 56(c). Defendants acknowledge that Ms. Buhrmaster and Plaintiffs at least occupied the disputed strip over that period, so this case hinges on the continuity of those two occupancies. To this latter end, Ms. Buhrmaster attested to her "desire to convey to Denise Gonzalez all [her] rights and use associated with [the] adverse possession of the" disputed strip. Ms. Buhrmaster further documented her "desire [to] transfer . . . the said area of adverse possession . . . from 2001 until . . . 2016," at which point she "sold the property . . . to Denise Gonzalez" before "mov[ing] to Florida."

Defendants point out that Ms. Buhrmaster "did not . . . verbal[ly] convers[e] with Plaintiffs about her adverse possession" of the strip. But Ms. Buhrmaster demonstrated "the objects and motives of the parties to the[ir] deed," 9 N.C. Index 4th *Deeds* § 34, by leaving on the "41-foot strip . . . the sculpture," "trampoline," and "gardens" she installed for Defendants' apparent later use. Circumstantial evidence of this sort still suffices for summary-judgment consideration. *See* N.C. R. Civ. P. 56(e) ("[A]ffidavits shall be made on personal knowledge . . . [and] set forth . . . facts as would be admissible in evidence . . . ."); *State v. Parker*, 354 N.C. 268, 279 (2001) ("[T]he law does not distinguish between the weight . . . [of] direct and circumstantial evidence . . . .").

True enough, Ms. Buhrmaster "did not proclaim her intent until [6] years after the transfer" of the 388 parcel to Defendants. But that length of time does not speak to Plaintiffs' claim of adverse possession at summary judgment. It instead speaks to

Ms. Buhrmaster's "credibility [as] a witness," which can only "be resolved by the fact finder" *qua* jury at trial. *State Farm Life Ins. Co. v. Allison*, 128 N.C. App. 74, 77 (1997). Read in accordance with the precedent as described above, the filings evidence a *prima facie* capability to tack Defendants' 6-year occupation of the disputed strip onto Ms. Buhrmaster's previous 15 years. Based on these considerations, I believe that the parties raise a "genuine issue . . . [of] material fact" that merit reversal of the trial court's summary judgment for Defendants. N.C. R. Civ. P. 56(c).

## II.  Conclusion

For the above reasons, I would hold that the trial court erred by granting summary judgment for Defendants and would thus reverse and remand for further proceedings consistent with the principles articulated here. I respectfully dissent.